202 P.3d 937 (2009)
STATE of Washington, Respondent,
v.
Timothy Scott FISHER, Petitioner.
No. 79801-0.
Supreme Court of Washington, En Banc.
Argued February 12, 2008.
Decided March 12, 2009.
*940 John Henry Browne, Law Offices of John Henry Browne PS, Seattle, WA, for Petitioner.
Benton County Prosecutor's Office, Scott Wayne Johnson, Mariah A. Wagar, Miller Mertens & Comfort PLLC, Kennewick, WA, for Respondent.
FAIRHURST, J.
¶ 1 Timothy Scott Fisher seeks review of an unpublished Court of Appeals, Division Three, decision affirming Fisher's guilty verdict on four counts of child molestation. Fisher claims he deserves a new trial based on the following assignments of error: improper admission of misconduct evidence under ER 404(b), prosecutorial misconduct, erroneous exclusion of bias evidence, and inadequate jury instructions. We hold Fisher did not receive a fair trial and reverse the Court of Appeals.

*941 I. FACTUAL AND PROCEDURAL HISTORY
¶ 2 In 2003, Melanie Lincoln told her mother, Judy Ward, that Fisher had molested her repeatedly. She alleged the abuse occurred 6 years earlier during Fisher's marriage to Ward when Melanie was around 12 years old. When Melanie made the disclosure, Fisher and Ward had already divorced. Melanie attributes her delay in reporting to embarrassment and fear of retribution by Fisher. Her decision to stay in the house with Fisher was influenced by her desire to remain with her younger brother, Brett Lincoln, and her younger sister, Brittany Doyea, both of whom she claims Fisher also physically abused.
¶ 3 Based on Melanie's allegations, Fisher was charged with one count of second degree child molestation. The information was amended to add three more counts.

Evidence introduced at the ER 404(b) hearing
¶ 4 Prior to trial, the court held an evidentiary hearing to determine whether to admit evidence of Fisher physically abusing his biological son and stepchildren under ER 404(b). The trial court heard testimony from Fisher's former stepchildren, Melanie, Brett, and Brittany. Each testified they witnessed or experienced physical harm at the hands of Fisher. Melanie testified she concealed the alleged sexual molestation because Fisher "scared" her. Verbatim Report of Proceedings (VRP) (June 8, 2004) at 54. The trial court determined, by a preponderance of the evidence, Melanie experienced and witnessed misconduct in the form of Fisher spanking, hitting, slapping, and kicking his son and former stepchildren. The court recognized the prejudicial nature of the evidence but reasoned it was relevant if Melanie's delayed reporting became an issue. The court ruled:
The purpose of the evidence will be to explain the delay in reporting. My earlier questions and answers from counsel it seemed clear that the delay of reporting will come up in the trial and be a major issue.... Evidence is very probative but certainly it would be unfairly prejudicial if the delay in reporting was not made an issue but if the delay in reporting is made an issue, which I understand it will be, I believe the probative value outweighs the prejudicial effect and there defin[i]tely should be a limiting instruction.
VRP at 190. Defense counsel did not ask for the limiting instruction, and it was not provided by the trial court.

Evidence of physical and sexual abuse at trial
¶ 5 Despite the pretrial ruling, comments and testimony regarding Fisher's alleged physical abuse came up throughout the proceedings. During the State's opening statement, the prosecuting attorney repeatedly referenced incidents of abuse of Melanie, Brett, and Brittany. Defense counsel made no mention during his opening statement of Melanie's delay in reporting.
¶ 6 For its case-in-chief, the State's first witness was Melanie. The focus of the testimony was on alleged instances of physical abuse. She testified that Fisher would "smack" the children on a daily basis on the side of the head. Suppl. Clerk's Papers (SCP) at 197. She also recounted specific instances in which Fisher "bashed" her head against Brett's head resulting in a black eye, slammed her head against the wall, and used a belt to spank the children. SCP at 199, 201-02.
¶ 7 According to Melanie's testimony, the sexual abuse occurred as a form of punishment. She claimed Fisher started to spank her privately in her room and eventually began to do other things such as fondling her vagina, twisting her breasts, and plucking her pubic hair. She asserted these sessions occurred daily during the workweek for a period of roughly one year.
¶ 8 The prosecuting attorney then directed Melanie to describe the alleged sexual abuse and asked her why she delayed reporting the sexual abuse.
[Prosecuting attorney]: You told us earlier about threats the defendant had made?
[Melanie]: Yes.
[Prosecuting attorney]: About not telling your mom and if you did tell, something would happen?

*942 [Melanie]: Right.
[Prosecuting attorney]: Were those threats made, also, in connection with the abuse, too?
[Melanie]: Yes. Actually, my mom pulled in the driveway one day while he was doing that and that was when the threat, you better not tell your mother. Hurry up, get your clothes on.
SCP at 216.
¶ 9 On cross-examination, defense counsel did not question Melanie regarding her delay in reporting the sexual abuse. After the prosecuting attorney elicited testimony on redirect that Melanie had disclosed incidents of Fisher's physical, but not sexual, abuse to the police in 1999, defense counsel asked Melanie whether she had told her mother about the sexual abuse between 1999 and 2003. Answering defense counsel's questions, Melanie explained that she had chosen not to tell her mother about the abuse and that her mother never asked her about the abuse until the 2003 disclosure.
¶ 10 Next, the State called Melanie's siblings who also described experiencing physical abuse by Fisher. Brett testified Fisher hit him on occasion in front of Melanie. Brett also described two instances in which Fisher threw him into walls, putting holes in the walls. He attributed his failure to disclose the abuse to his fear of Fisher. Brittany similarly testified that Fisher hit, spanked, and pushed the children. She claimed Fisher threatened to harm them if they disclosed the alleged violence.
¶ 11 During its case-in-chief, the State also called Fisher's biological son and daughter, Tyler and Whitney. On cross-examination, both Tyler and Whitney denied being physically abused by Fisher. On redirect of Tyler and direct examination of Whitney, the prosecuting attorney asked them about an instance when the police investigated Fisher for abusing Tyler. Neither could remember. The State then called Jennifer Dick, Tyler's and Whitney's mother, who testified that Fisher had once slapped Tyler across the face, leaving a red mark in the outline of Fisher's fingers. Dick testified she called the police regarding the abuse and disclosed other instances of Fisher abusing Tyler.
¶ 12 During the defense's case-in-chief, both Fisher and his wife, Peggy Fisher, testified about Fisher's relationship with his children and stepchildren. Peggy Fisher testified she felt comfortable leaving her two daughters, Ashland and Shelby, in Fisher's care. On direct examination, Fisher denied having "discipline issues or problems with Melanie." SCP at 675. He testified he never threatened the children or molested Melanie. He did admit to some roughhousing and playing and explained the head-bashing incident. He also disclosed that he slapped his son, Tyler.
¶ 13 On cross-examination, the prosecuting attorney elicited testimony from Fisher regarding the slapping and kicking of Tyler. Over defense counsel's objection, the prosecuting attorney was allowed to question Fisher regarding a Child Protective Services (CPS) report containing allegations that Fisher physically abused his current stepchildren, Ashland and Shelby. The prosecuting attorney argued he was justified to question Fisher about alleged physical abuse because defense counsel threw "the barn door open to these issues, painting a happy family life." SCP at 719-20. During trial, defense counsel noted his standing objection should the prosecuting attorney choose to argue in closing argument that the evidence of alleged physical abuse proved Fisher's propensity to sexually abuse Melanie. Prior to closing arguments, the court instructed the jury:
The only evidence you are to consider consists of the testimony of the witnesses and the exhibits admitted into evidence....
. . . .
The attorneys' remarks, statements and arguments are intended to help you understand the evidence and apply the law. They are not evidence. Disregard any remark, statement or argument that is not supported by the evidence or the law as stated by the Court.
SCP at 799-800. In closing arguments, the prosecuting attorney stated:
The truth of this case is that the system has failed. The system has failed Tyler. The system has failed Melanie. The system *943 has failed Brett. The system has failed Brittany. And the system has failed Ashland and Shelby [Fisher's current stepchildren]. It's failed all of them sitting out there. And there is only one way that we can make sure that the system stops failing and that's to do the job that you all have been charged with and that I know you'll do.
The time for excuses is over, because now we're all part of this system and I'm passing the baton [] on to the twelve of you who will deliberate in this case. Failure is not an option here, ladies and gentlemen, because justice doesn't allow it.
SCP at 831-32.
¶ 14 In rebuttal closing argument, the prosecuting attorney stated that the evidence of abuse revealed a pattern.
There can be no doubt that the defendant is abusive. It shows in the way the defendant deals with and has dealt with children in his life. Children are objects to be abused. Had there been one instance of the defendant being abusive, that wouldn't be a very good argument. Had he been abusive once to Tyler, once to Brett, no. It's not once, it's thirteen separate instances, ladies and gentlemen. Thirteen separate instances, including Melanie and including the sexual abuse.
... And the defendant engaged in a repeated pattern of abuse that didn't stop with physical abuse. It spilled right over into sexual abuse.
SCP at 863-64.
¶ 15 Next, the prosecuting attorney recounted testimony describing physical abuse by Fisher against his children and stepchildren.
We heard a lot about discipline. I don't want to talk too much about that, but when did beating a four year old to the point of having to have the police charge you become acceptable discipline? When did throwing children through walls become acceptable discipline? When did bruising them on the neck with what looks like rope burns become acceptable discipline? Beating with a belt to the point that it leaves a mark, when did that become acceptable? Kicking them. Banging their heads together causing a bloody nose? On and on and on. That's not acceptable discipline. No more than molesting Melanie, for whatever perverse reasons he did  no more than that is acceptable discipline or an acceptable way for the defendant to find his sexual pleasure. It's not acceptable. It never has been. It never will be.
SCP at 866-67. Defense counsel did not object during this portion of closing argument.

Excluded evidence of witness bias
¶ 16 Midtrial, Fisher sought to admit evidence regarding the financial details of his divorce from Ward. Specifically, he desired to establish bias by showing Ward avoided paying the divorce judgment by filing for bankruptcy and allegedly commented she was going to "get" Fisher. SCP at 480. The court ruled to exclude the specific details offered by defense counsel. Instead, counsel was allowed to ask Ward about the divorce generally and whether she harbored ill feelings toward Fisher at the time of trial, which she admitted she did.

Jury instructions
¶ 17 The court gave the following "to convict" instruction:
To convict the defendant of the crime of child molestation in the second degree, each of the following elements of the crime must be proved beyond a reasonable doubt:
(1) That on four separate days between January 1, 1997 and December 30, 1997, the defendant had sexual contact with Melanie Lincoln.
Clerk's Papers (CP) at 118.
¶ 18 The court gave the following unanimity instruction:
There are allegations that the defendant committed acts of Child Molestation on multiple occasions. To convict the defendant, one or more particular acts must be proved beyond a reasonable doubt and you must unanimously agree as to which act or acts have been proved beyond a reasonable doubt. You need not unanimously agree *944 that all the acts have been proved beyond a reasonable doubt.
CP at 116.

Instances of alleged prosecutorial misconduct[1]
¶ 19 Fisher argues before this court that instances of prosecutorial misconduct deprived him a fair trial. To understand the allegations of misconduct in the context of the trial, we now detail the portions of the record where Fisher argues misconduct occurred.

A. Improper solicitation of work product
¶ 20 Fisher claims the prosecuting attorney improperly solicited protected attorney work product during his cross-examination of defense investigator Marlene Goodman. The prosecuting attorney questioned Goodman about an interview she observed between defense counsel and Melanie.
[Prosecuting attorney]: And as a former police officer, a former employee of a Prosecutor's office, if you're interviewing the victim of a specific crime, do you normally ask about the crime?
[Goodman]: Mr. Johnson, I told you I was not the one conducting the interview. I was there to take notes.
[Prosecuting attorney]: I think we all understand that. And I'm just asking you, based upon your training and experience 
[Defense counsel]: Objection, Judge. This goes into what I choose to interview about, what I think was important at the time. It's ridiculous.
[Court]: I'll sustain the objection.
SCP at 357.

B. Accusation of witness-coaching
¶ 21 Fisher claims the prosecuting attorney accused defense counsel of improper witness-coaching. The prosecuting attorney repeatedly asked Fisher whether he "rehearsed" or "practiced" his testimony with defense counsel and Goodman. SCP at 736-37. Defense counsel objected and the prosecuting attorney asserted, "[t]he answers [Fisher] is giving are pat answers and we need to get to the bottom of why." SCP at 738. Defense counsel objected on the grounds that the prosecuting attorney needed to cease making statements and ask the witness questions. After the court sustained the objection, the prosecuting attorney continued to question Fisher.
[Prosecuting attorney]: There were numerous opportunities for you to be alone with Melanie in her room. Yes or no?
[Fisher]: No.
[Prosecuting attorney]: There were not?
[Fisher]: Numerous? No.
[Prosecuting attorney]: Were there opportunities  and you've been coached well

[Defense counsel]: Objection, Judge.
[Court]: Sustained.
[Defense counsel]: He has not been coach[e]d and that is not a fair inference.
[Court]: Sustained. No comments, just questions.
SCP at 738-39 (emphasis added).

C. Facial expressions and gestures by the prosecuting attorney
¶ 22 Several courtroom observers witnessed the prosecuting attorney gesticulating during direct examination of Fisher and the defense attorney's opening and closing arguments. Specifically, the prosecuting attorney rolled his eyes, winced, shook his head, rubbed his head, put his head in his hands, and also thrust out his hands in disbelief. Defense investigator Goodman signed an affidavit declaring she thought the actions were intended to prejudice the jury. The trial court ruled the prosecuting attorney did not "ridicule or disparage the defense attorney" and the gestures, when viewed in the context of the entire trial, were "not capable of undermining the jury's impartiality or seriously prejudicing any party's case." CP at 20.

*945 D. Misstatement of the burden of proof
¶ 23 Fisher claims the prosecuting attorney misstated the burden of proof in his closing argument. In closing, the prosecuting attorney stated:
You also got to see Melanie Lincoln on the stand. And there weren't two faces to Melanie Lincoln. There was one Melanie. And she told you about what the defendant did to her. She told you with honesty and with sincerity. And you got to evaluate her credibility when she was up here. How was her testimony, including direct examination and cross-examination, different from the defendant's? Was she putting on a show and then changing that show for the purposes of you all? No. She came up here and she told you the truth. And when you balance that against what you saw with the defendant, the balance tips heavilyheavily towards the irrefutable truth that Melanie Lincoln is telling you the truth. That she is telling you what the defendant did to her.
SCP at 807.
¶ 24 In rebuttal, the prosecuting attorney argued:
And yes, it really does come down in the end to whose credibility you believe. Do you believe Melanie's? Or, do you believe the defendant's? There is a lot of evidence backing Melanie's credibility. But do you notice one area that the defense never talked about during the closing? His client. You never heard him talk about his client. You never heard him talk about how his client appeared on the stand. You never heard him talk about his client's answers. You never heard him talk about his client's demeanor.
SCP at 870-71. Defense counsel did not object to these statements.
¶ 25 The prosecuting attorney also reminded the jury of the State's burden "to prove to you that the defendant had sexual contact with Melanie Lincoln." SCP at 808. In addition, jury instruction 3 informed the jury that the "State is the plaintiff and has the burden of proving each element of the crime beyond a reasonable doubt." CP at 114.

E. Questioning Fisher about the consequences of conviction
¶ 26 The prosecuting attorney questioned Fisher about his knowledge of the sentencing consequences of conviction. The prosecuting attorney asked Fisher whether he knew that, if convicted, he would have to register as a sex offender once released from prison and would not likely be allowed contact with his stepchildren. Defense counsel did not object. Jury instruction 1 informed the jury that any punishment following conviction "cannot be considered by [the jury] except insofar as it may tend to make you careful." CP at 111.

Procedural history subsequent to trial
¶ 27 A jury found Fisher guilty on all four counts of second degree child molestation. Fisher twice moved for a new trial based on deficient jury instructions, prosecutorial misconduct, denial of confrontation clause rights, improper admission of ER 404(b) evidence, and infringement of the work product doctrine. The court denied the motions and sentenced Fisher to 100 months in custody. A unanimous panel of the Court of Appeals affirmed, finding the alleged trial irregularities did not deny Fisher a fair trial. State v. Fisher, noted at 136 Wash.App. 1009, 2006 WL 3462183, at *15. We granted review. State v. Fisher, 162 Wash.2d 1001, 175 P.3d 1093 (2007).

II. ISSUES
A. Did the trial court err in its pretrial ruling admitting the ER 404(b) evidence?
B. Did the prosecuting attorney commit prosecutorial misconduct in producing and discussing the ER 404(b) evidence?
C. Are there issues we should resolve that may reappear on remand?
D. Were there other instances of prosecutorial misconduct that merit a new trial?

*946 III. ANALYSIS

A. Did the trial court err in its pretrial ruling admitting the ER 404(b) evidence?
¶ 28 Generally, evidence of a defendant's prior misconduct is inadmissible to demonstrate the accused's propensity to commit the crime charged. ER 404(b); State v. Holmes, 43 Wash.App. 397, 400, 717 P.2d 766 (1986) (rejecting the "once a thief, always a thief" rationale for admitting evidence). However, ER 404(b) allows the introduction of prior misconduct for other purposes like demonstrating motive or intent.[2] Washington courts have recognized that evidence of misconduct is admissible to prove the alleged victim's state of mind. See, e.g., State v. Nelson, 131 Wash.App. 108, 116, 125 P.3d 1008 (2006) (allowing evidence of past physical abuse to demonstrate the victim's fear of the defendant and explain the apparent inconsistency of the victim not reporting the full extent of the abuse earlier); State v. Cook, 131 Wash.App. 845, 851-52, 129 P.3d 834 (2006) (approving use of ER 404(b) evidence to show the victim's state of mind).
¶ 29 We read ER 404(b) in conjunction with ER 403. ER 403 requires the trial court to exercise its discretion in excluding relevant evidence that would be unfairly prejudicial.[3] Prior to the admission of misconduct evidence, the court must (1) find by a preponderance of the evidence the misconduct actually occurred, (2) identify the purpose of admitting the evidence, (3) determine the relevance of the evidence to prove an element of the crime, and (4) weigh the probative value against the prejudicial effect of the evidence. State v. Lough, 125 Wash.2d 847, 853, 889 P.2d 487 (1995); State v. Foxhoven, 161 Wash.2d 168, 175, 163 P.3d 786 (2007).
¶ 30 We review the trial court's interpretation of ER 404(b) de novo as a matter of law. Foxhoven, 161 Wash.2d at 174, 163 P.3d 786. If the trial court interprets ER 404(b) correctly, we review the trial court's ruling to admit or exclude evidence of misconduct for an abuse of discretion. Id. A trial court abuses its discretion where it fails to abide by the rule's requirements. Id.
¶ 31 Fisher contends the prejudicial effect of admitting evidence of physical abuse of his former stepchildren outweighed the probative value. The Court of Appeals, however, found the trial court did not abuse its discretion in admitting evidence of Fisher's physical abuse of his stepchildren. Fisher, 136 Wash.App. 1009, 2006 WL 3462183, at *3-*4. It approved of the trial court's three-step inquiry into whether evidence of Fisher's physical abuse of Melanie, Brett, and Brittany was admissible for the limited purpose of explaining Melanie's delay in reporting the abuse. Id. at *2-*3.
¶ 32 We agree the trial court identified a proper purpose for admitting the evidence to explain why Melanie chose not to disclose the sexual abuse. The court based its decision upon ample testimony at the pretrial hearing and the recognition that the issue of delay might become material to the State's case.
¶ 33 The trial court properly found the probative value of the evidence outweighed its prejudicial effect. Based on this finding, the trial court allowed the evidence of physical abuse if defense counsel made an issue of Melanie's delayed reporting. The trial court's ruling made sense given Fisher was not on trial for or charged with physical abuse. Only if defense counsel made an issue of Melanie's delayed reporting did the physical abuse become relevant to the determination of whether sexual abuse occurred. The trial court did not err in ruling the evidence of physical abuse of Melanie, Brett, and Brittany was admissible conditioned *947 upon the defense making an issue of Melanie's delayed reporting.

B. Did the prosecuting attorney commit prosecutorial misconduct in producing and discussing the ER 404(b) evidence?
¶ 34 Fisher contends that the State committed misconduct in its presentation of the ER 404(b) evidence and closing argument. The prosecuting attorney represents the people and is presumed to act with impartiality "'"in the interest only of justice."'" State v. Reed, 102 Wash.2d 140, 147, 684 P.2d 699 (1984) (quoting State v. Case, 49 Wash.2d 66, 70-71, 298 P.2d 500 (1956) (quoting People v. Fielding, 158 N.Y. 542, 547, 53 N.E. 497 (1899))). Prosecuting attorneys are quasi-judicial officers who have a duty to subdue their courtroom zeal for the sake of fairness to a criminal defendant. State v. Davenport, 100 Wash.2d 757, 763, 675 P.2d 1213 (1984). With these tenets in mind, we address Fisher's allegations of prosecutorial misconduct.
¶ 35 The Sixth Amendment to the United States Constitution guarantees a defendant a fair trial but not a trial free from error. Reed, 102 Wash.2d at 145, 684 P.2d 699. The burden rests on the defendant to show the prosecuting attorney's conduct was both improper and prejudicial. State v. Gregory, 158 Wash.2d 759, 858, 147 P.3d 1201 (2006). Once proved, prosecutorial misconduct is grounds for reversal where there is a substantial likelihood the improper conduct affected the jury. Id. at 841, 147 P.3d 1201; State v. Belgarde, 110 Wash.2d 504, 508, 755 P.2d 174 (1988). Defense counsel's failure to object to the misconduct at trial constitutes waiver on appeal unless the misconduct is "`so flagrant and ill-intentioned that it evinces an enduring and resulting prejudice'" incurable by a jury instruction. Gregory, 158 Wash.2d at 841, 147 P.3d 1201 (quoting State v. Stenson, 132 Wash.2d 668, 719, 940 P.2d 1239 (1997)).
¶ 36 In the context of closing arguments, the prosecuting attorney has "wide latitude in making arguments to the jury and prosecutors are allowed to draw reasonable inferences from the evidence." Id. at 860, 147 P.3d 1201 (citing State v. Gentry, 125 Wash.2d 570, 641, 888 P.2d 1105 (1995)). We review allegedly improper comments in the context of the entire argument. Id. at 861, 147 P.3d 1201. References to evidence outside of the record and bald appeals to passion and prejudice constitute misconduct. Belgarde, 110 Wash.2d at 507-08, 755 P.2d 174. If defense counsel failed to request a curative instruction, the court is not required to reverse. State v. Russell, 125 Wash.2d 24, 85, 882 P.2d 747 (1994).
¶ 37 Here, the trial court expressly conditioned the admission of evidence of physical abuse on defense counsel's making an issue of Melanie's delayed reporting. The prosecuting attorney, however, first mentioned the physical abuse in his opening statement and introduced the evidence of physical abuse during the direct examination of Melanie, the State's first witness. Defense counsel was not provided the opportunity to decide whether to raise the issue of Melanie's delayed reporting, and defense counsel ultimately never raised Melanie's delay in reporting.
¶ 38 By preemptively introducing the evidence, the prosecuting attorney did not use the evidence for its purported purpose. Instead of using the evidence to rebut a defense argument that Melanie's delay in reporting the sexual abuse means that she is not credible, the prosecuting attorney used the evidence to generate a theme throughout the trial that Fisher's sexual abuse of Melanie was consistent with his physical abuse of all his stepchildren and biological children, an impermissible use of the evidence. In violation of the court's pretrial ruling and in spite of defense counsel's standing objection,[4] the *948 prosecuting attorney directed the jury to consider the evidence of physical abuse to prove Fisher's alleged propensity to commit sexual abuse when he discussed the system failing Tyler, Melanie, Brett, Brittany, Ashland, and Shelby.
¶ 39 The prosecuting attorney further stated Fisher "engaged in a repeated pattern of abuse that didn't stop with physical abuse. It spilled right over into sexual abuse." SCP at 863-64. The prosecuting attorney thus contravened the trial court's pretrial ruling by impermissibly using the physical abuse evidence to demonstrate Fisher's propensity to commit the crimes. Using the evidence in such a manner after receiving a specific pretrial ruling regarding the evidence clearly goes against the requirements of ER 404(b) and constitutes misconduct.
¶ 40 We hold that there is a substantial likelihood that the prosecuting attorney's misconduct affected the jury, thus meriting Fisher a new trial. Even though defense counsel never made an issue of Melanie's delay in reporting, the prosecuting attorney preemptively presented the physical abuse evidence and then argued that it demonstrated Fisher's propensity to commit abuse. The jury, therefore, was left with the wrong impression that it must convict Fisher to obtain justice for the harm caused to Brett, Brittany, Ashland, and Shelby, in addition to Melanie. Although the court instructed the jury to disregard the evidentiary value of the attorneys' remarks, the instruction failed to inform the jury that it could not consider the physical abuse evidence to assess Fisher's propensity to sexually abuse Melanie. Viewed in the context of the entire argument presented at trial, the preemptive presentation of the physical abuse and subsequent emphasis on the evidence during closing argument had a substantial likelihood of affecting the jury. See Gregory, 158 Wash.2d at 861, 147 P.3d 1201. The prosecutorial misconduct denied Fisher a fair trial.

C. Are there issues we should resolve that may reappear on remand?
¶ 41 While we reverse Fisher's convictions and remand for a new trial on the basis of the preemptive introduction of physical abuse and propensity argument, we deem it necessary to address three other issues that are likely to reappear on remand.

1. Whether the court erred in admitting the CPS reports

¶ 42 Fisher alleges the trial court erred by permitting testimony and admitting CPS reports regarding alleged physical abuse of his current stepchildren. The Court of Appeals found Fisher "`opened the door'" to the subject and therefore admission of rebuttal evidence was proper. Fisher, 136 Wash.App. 1009, 2006 WL 3462183, at *3-*4. We agree with Fisher that the trial court abused its discretion in admitting the testimony.
¶ 43 The State may offer evidence of prior misconduct to rebut an assertion by the defendant. State v. Ciskie, 110 Wash.2d 263, 281, 751 P.2d 1165 (1988) (holding defendant's phone call to his ex-wife announcing his intent to kill the victim was not an "unrelated act of misconduct" and permissible to rebut defendant's testimony that he *949 did not threaten the murder victim). Where the defendant "opened the door" to a particular subject, the State may pursue the subject to clarify a false impression. State v. Gefeller, 76 Wash.2d 449, 455, 458 P.2d 17 (1969). However, the court may exclude unduly prejudicial evidence. ER 403. Further, the prosecution may not impeach a witness, or contradict prior testimony, on collateral matters. State v. Oswalt, 62 Wash.2d 118, 120, 381 P.2d 617 (1963) ("It is a well recognized and firmly established rule in this jurisdiction, and elsewhere, that a witness cannot be impeached upon matters collateral to the principal issues being tried."); ER 402 ("Evidence which is not relevant is not admissible."). We review evidentiary rulings for an abuse of discretion. Foxhoven, 161 Wash.2d at 174, 163 P.3d 786.
¶ 44 The trial court abused its discretion in admitting the evidence regarding Fisher's current stepchildren for two reasons. First, Fisher was not charged with physical abusehe was charged with sexual molestation. Thus, evidence that the defendant physically abused his current children is not relevant to the State's claim that the defendant sexually abused Melanie. Contrary to the evidence of abuse of Melanie, Brett, and Brittany, which could be admissible if defense counsel had raised Melanie's delay in reporting, the physical abuse of Fisher's current stepchildren is not relevant to proving Fisher committed the acts against Melanie or explaining Melanie's delay in reporting.
¶ 45 Second, the evidence of later physical abuse of unrelated victims is collateral to the issue of whether Fisher sexually molested Melanie. Because the State could not present evidence on a matter collateral to the principal issue being tried, the trial court erred in permitting impeachment on this point. Therefore, the trial court abused its discretion by allowing the prosecution to introduce rebuttal evidence regarding allegations of physical abuse against the stepchildren.[5]

2. Whether the trial court unconstitutionally limited the scope of cross-examination of Ward

¶ 46 Fisher contends the trial court impermissibly limited the scope of his cross-examination of Ward by prohibiting him from asking her certain questions about their divorce proceedings. Defense counsel sought to expose the bias of Ward, Fisher's ex-wife, by introducing evidence of the financial details of the protracted and rancorous divorce settlement[6] as well as a comment allegedly made by Ward that she was going to "get" Fisher. SCP at 480. The trial court denied the motion but allowed the following exchange between defense counsel and Ward:
[Defense counsel]: Have you ever reduced your level of anger or dislike if that's a better word, toward [Mr.] Fisher since then?
. . . .
[Ward]: No.
[Defense counsel]: And that continues until today, right there while you're sitting on the witness stand, you certainly don't like him, correct?
[Ward]: Very correct.
SCP at 464-65.
¶ 47 The trial court denied the motion for a new trial because the defense's offer of proof on "the alleged financial motivation of Judy Ward to lie about the defendant was speculative and remote in time from the alleged abuse in the case.... Even if there were credible evidence of Judy Ward having a financial incentive to lie about defendant's abuse, it was too remote in time to be relevant." CP at 19-20 (emphasis added). The Court of Appeals affirmed. Fisher, 136 Wash.App. 1009, 2006 WL 3462183, at *13.
¶ 48 The confrontation clause of the Sixth Amendment guarantees a defendant the opportunity to confront the witnesses against him through cross-examination. Delaware v. Van Arsdall, 475 U.S. 673, 678, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). *950 The trial court retains the authority to set boundaries regarding the extent to which defense counsel may delve into the witness' alleged bias "based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Id. at 679, 106 S.Ct. 1431.
¶ 49 A defendant has a right to confront the witnesses against him with bias evidence so long as the evidence is at least minimally relevant. State v. Hudlow, 99 Wash.2d 1, 16, 659 P.2d 514 (1983). "Bias includes that which exists at the time of trial, for the very purpose of impeachment is to provide information that the jury can use, during deliberations, to test the witness's accuracy while the witness was testifying." State v. Dolan, 118 Wash.App. 323, 327-28, 73 P.3d 1011 (2003); see also State v. Harmon, 21 Wash.2d 581, 591, 152 P.2d 314 (1944) (finding the trial court properly measured admissibility of bias evidence by proximity in time to trial testimony). A defendant enjoys more latitude to expose the bias of a key witness. State v. Darden, 145 Wash.2d 612, 619, 41 P.3d 1189 (2002). We uphold a trial court's ruling on the scope of cross-examination absent a finding of manifest abuse of discretion. Id.
¶ 50 Fisher cites State v. Brooks, 25 Wash. App. 550, 552, 611 P.2d 1274 (1980), for the proposition that his confrontation right includes the right to put specific facts before the jury. Fisher misstates this rule. The Brooks court found a defendant has a right to put specific reasons motivating the witness' bias before the jury, not specific facts. Id. at 551-52, 611 P.2d 1274. Although the trial court excluded evidence of the financial details of the divorce, it did allow counsel to elicit testimony from Ward about the prolonged nature of the divorce and whether she harbored ill will toward Fisher. Fisher's confrontation rights were not violated since the jury was apprised of the specific reasons why Ward's testimony might be biased.
¶ 51 The trial court had wide latitude to limit Fisher's cross-examination of Ward given the "speculative" and "remote" nature of the evidence. CP at 19. The evidence Fisher sought to admit involved details of their divorce that transpired long before Melanie disclosed the abuse to Ward. Further, Ward was not a key witness for the defense. The trial court acted within its discretion to exclude the evidence proffered by defense counsel to demonstrate Ward's animus toward Fisher.

3. Whether the court gave adequate jury instructions

¶ 52 Fisher assigns two constitutional errors to the court's jury instructions. First, Fisher alleges the "to convict" instruction did not require the State to prove every element of the crime beyond a reasonable doubt. Second, Fisher asserts the court's instructions failed to require the jury to return a unanimous verdict.

a. Whether the "to convict" instruction contained every element of the crime charged

¶ 53 The State bears the burden of proving every element of the crime charged beyond a reasonable doubt. In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). It follows that the "to convict" instruction must contain every element of the crime charged. State v. Mills, 154 Wash.2d 1, 7, 109 P.3d 415 (2005). Failure to include every element of the crime charged amounts to constitutional error that may be raised for the first time on appeal. Id. at 6, 109 P.3d 415. We review "to convict" instructions de novo. Id. at 7, 109 P.3d 415.
¶ 54 In pertinent part, the "to convict" instruction read as follows:
To convict the defendant of the crime of child molestation in the second degree, each of the following elements of the crime must be proved beyond a reasonable doubt:
(1) That on four separate days between January 1, 1997 and December 30, 1997, the defendant had sexual contact with Melanie Lincoln.
CP at 118.
¶ 55 Fisher argues the "to convict" instruction was constitutionally deficient because *951 it did not inform the jury that each count represented a separate crime and that its verdict on one count did not control the others. Fisher is mistaken on the latter contention. Instruction 10 notified the jury that its "verdict on one count does not control your verdict on any other count." CP at 121. However, Fisher correctly observes that the instructions failed to inform the jury each count represented a separate crime. Thus, the constitutionality of the "to convict" instruction turns upon whether the legal definition of the term "count" is an essential element of second degree child molestation.
¶ 56 Black's Law Dictionary defines "elements of crime" as "[t]he constituent parts of a crime  [usually] consisting of the actus reus, mens rea, and causation  that the prosecution must prove to sustain a conviction." BLACK'S LAW DICTIONARY 559 (8th ed.2004). Our cases also identify the statutory elements of a crime as the essential elements. See, e.g., Mills, 154 Wash.2d at 13-15, 109 P.3d 415 (finding the "to convict" instruction constitutionally deficient since it omitted a statutory element of harassment); cf. State v. Teal, 152 Wash.2d 333, 339, 96 P.3d 974 (2004) (deeming the "to convict" instruction constitutional even though it did not contain an instruction on accomplice liability). A proper "to convict" instruction need not contain all pertinent law such as "definitions of terms, duties of the jury to disregard statements that are not evidence, and so forth." Mills, 154 Wash.2d at 8, 109 P.3d 415 (emphasis added) (citing State v. Emmanuel, 42 Wash.2d 799, 259 P.2d 845 (1953)). Consistent with Mills, we hold the absence of the definition of the term "count" did not compromise the "to convict" instruction's constitutionality.

b. Whether the jury instructions required unanimity

¶ 57 To return a guilty verdict, the jury must unanimously agree that the defendant committed the charged crime. State v. Petrich, 101 Wash.2d 566, 569, 683 P.2d 173 (1984). Where a defendant is charged with multiple counts of the same crime, the State must designate the acts upon which it relies to prove its case. Id. at 570, 683 P.2d 173. Alternatively, the court may instruct the jury to agree unanimously as to which acts support a specific count. State v. Kitchen, 110 Wash.2d 403, 409, 756 P.2d 105 (1988).
¶ 58 Failure to give a unanimity instruction in cases involving multiple counts violates the defendant's state constitutional right to a unanimous jury verdict and his or her federal constitutional right to trial by jury. Id.; WASH. CONST. art. I, § 22; U.S. CONST. amend. VI. The court does not tolerate prejudicial constitutional error and will reverse unless the error was harmless beyond a reasonable doubt. Kitchen, 110 Wash.2d at 409, 756 P.2d 105.
¶ 59 Here, the unanimity instruction stated:
There are allegations that the defendant committed acts of Child Molestation on multiple occasions. To convict the defendant, one or more particular acts must be proved beyond a reasonable doubt and you must unanimously agree as to which act or acts have been proved beyond a reasonable doubt. You need not unanimously agree that all the acts have been proved beyond a reasonable doubt.
CP at 116 (emphasis added).
¶ 60 The court reviews jury instructions in the context of all the instructions given. Mills, 154 Wash.2d at 7, 109 P.3d 415. The unanimity instruction required the jury to unanimously agree on the specific act or acts that had been proved beyond a reasonable doubt. The jurors were also instructed that convicting Fisher required them to find that sexual contact occurred on four separate days. Furthermore, the jurors were instructed that their finding on one count did not control their verdict on any other count.[7] Read in conjunction, these instructions *952 sufficiently protected Fisher's right to unanimity.

D. Were there other instances of prosecutorial misconduct that merit a new trial?
¶ 61 In addition to the prosecuting attorney's misuse of the ER 404(b) evidence, Fisher asserts several other prosecutorial mistakes denied him a fair trial.[8] In particular, Fisher alleges the prosecuting attorney committed misconduct by (1) improperly soliciting protected attorney work product during his direct examination of defense investigator Goodman; (2) accusing defense counsel of improper witness-coaching by repeatedly asking Fisher whether he "rehearsed" or "practiced" his testimony with defense counsel and Goodman (SCP at 736-37); (3) gesticulating during direct examination of Fisher and defense counsel's opening and closing arguments by rolling his eyes, wincing, shaking his head, rubbing his head, putting his head in his hands, and thrusting his hands in disbelief; (4) misstating the burden of proof in his closing argument by asking the jury if defense counsel had discussed his client's credibility during his closing argument; and (5) questioning Fisher about his knowledge of the sentencing consequences of conviction by asking if Fisher knew that, if convicted, he would have to register as a sex offender once released from prison and would not likely be allowed contact with his stepchildren. Since we find the prosecuting attorney committed misconduct by misusing the ER 404(b) evidence and reverse on that basis, we do not decide whether the other alleged prosecutorial mistakes, either individually or collectively, require a new trial. While a number of these claims cause us concern, we are confident on remand, the prosecuting attorney and trial court will do everything they can to ensure Fisher receives a fair trial.

IV. CONCLUSION
¶ 62 Fisher was denied his due process right to a fair trial when the prosecuting attorney improperly introduced highly prejudicial evidence of Fisher's misconduct in violation of the court's pretrial ruling. The trial court also erred in allowing the prosecution to admit the CPS reports regarding Fisher's current stepchildren. However, the trial court did not violate Fisher's right to confront Ward by limiting the scope of cross-examination nor did the jury instructions misstate the law or deny Fisher his right to a unanimous verdict.
¶ 63 We reverse the Court of Appeals and remand for a new trial.
WE CONCUR: ALEXANDER, C.J., C. JOHNSON, SANDERS, CHAMBERS, OWENS, STEPHENS, and J. JOHNSON, JJ.
MADSEN, J., (concurring).
¶ 64 While I agree that Timothy Fisher's conviction should be reversed, I do not agree that this reversal can be based solely on prosecutorial misconduct. The root of the error in Fisher's trial starts with the trial court's erroneous decision to admit testimony of physical abuse that had no temporal relationship to the sexual molestation charges in this case. That error was compounded by defense counsel's failure to request a limiting instruction related to prior physical abuse and culminates in the prosecution's use of the evidence to argue that Fisher was an abuser, had a propensity for physical abuse, and therefore clearly committed acts of sexual *953 abuse against Melanie Lincoln. It is the number and interrelation of errors in Fisher's trial that create the grounds for reversal of his conviction, not the prosecutor's conduct standing alone. In my opinion, the accumulation of errors denied Fisher a fair trial and only when taken as a whole do they warrant reversal.

Admission of ER 404(b) Evidence
¶ 65 I agree with the majority that the trial court did not abuse its discretion in admitting evidence that Fisher physically abused Melanie, Brett Lincoln, Brittany Doyea, and Tyler Fisher during the two years that Melanie alleges the sexual abuse against her also occurred. Majority at 947. I also agree with the majority that the trial court abused its discretion in admitting evidence that Fisher physically abused his current stepchildren. Majority at 949. I write separately because, in my opinion, the trial court also abused its discretion in admitting evidence that Fisher physically abused Tyler six years prior to meeting Melanie and marrying her mother. Additionally, because I do not agree that reversal is warranted on the basis of prosecutorial misconduct alone it is necessary to more fully analyze the trial court's admission of ER 404(b) evidence and the prosecutor's use of that evidence.
¶ 66 "Before admitting evidence of other wrongs under ER 404(b), a trial court must (1) find that a preponderance of evidence shows that the misconduct occurred; (2) identify the purpose for which the evidence is being introduced; (3) determine that the evidence is relevant; and (4) find that its probative value outweighs its prejudicial effect." State v. Baker, 89 Wash.App. 726, 731-32, 950 P.2d 486 (1997) (footnote omitted) (citing State v. Lough, 125 Wash.2d 847, 852, 889 P.2d 487 (1995)). The trial court should always "begin with the presumption that evidence of prior bad acts is inadmissible." State v. DeVincentis, 150 Wash.2d 11, 17, 74 P.3d 119 (2003). "In doubtful cases, the evidence should be excluded." Baker, 89 Wash. App. at 732, 950 P.2d 486 (citing State v. Smith, 106 Wash.2d 772, 776, 725 P.2d 951 (1986)).
¶ 67 As the majority notes, a trial court's admission of ER 404(b) evidence is reviewed for abuse of discretion. Majority at 946; State v. Magers, 164 Wash.2d 174, 189 P.3d 126 (2008) (citing State v. Pirtle, 127 Wash.2d 628, 648, 904 P.2d 245 (1995)). Abuse of discretion exists when "a trial court's exercise of its discretion is manifestly unreasonable or based upon untenable grounds or reasons." State v. Powell, 126 Wash.2d 244, 258, 893 P.2d 615 (1995).
¶ 68 In child molestation and sexual abuse cases, courts have allowed evidence of prior bad acts by the defendant against the victim to explain the victim's delay in reporting sexual abuse and to rebut the "implication that molestation did not occur." State v. Wilson, 60 Wash.App. 887, 891, 808 P.2d 754, review denied, 117 Wash.2d 1010, 816 P.2d 1224 (1991). The Fourth Circuit Court of Appeals, interpreting Fed.R.Evid. 404(b), cited Court of Appeals, Division Two's decision in Wilson and expanded its reasoning to hold that evidence of physical violence against a sexual abuse victim and her family is admissible "to explain [the victim's] submission to the acts and her delay in reporting the sexual abuse." United States v. Powers, 59 F.3d 1460, 1464 (4th Cir.1995), cert. denied, 516 U.S. 1077, 116 S.Ct. 784, 133 L.Ed.2d 734 (1996).[1]
¶ 69 In analyzing the admissibility of physical abuse to explain a victim's state of mind, delay in reporting, or credibility under ER 404(b), courts have focused on the relevance factor of the ER 404(b) test for admissibility.[2] The Fourth Circuit in Powers most *954 clearly states the nexus between physical abuse and sexual assault: "Evidence of the beatings of both [the victim] and her family provides a cogent explanation for [the victim's] failure to report the sexual abuse." 59 F.3d at 1465. In Powers the Fourth Circuit noted, "when taken as a whole," physical beatings that predate sexual abuse "show that [the] abuse that [the defendant] inflicted upon his family was, in reality, one continuous pattern of activity that existed whenever he was present in the home." Id. at 1466.
¶ 70 When admitted to explain delay, the relevance standard under ER 404(b) requires that the evidence that a defendant physically abused a victim who is alleging sexual abuse, or her family, demonstrate the abuse caused the sexual assault victim hesitation to report the sexual abuse. Additionally, the test for relevancy includes a temporal component between the physical abuse and the sexual abuse. Thus, if the victim did not know of or witness the physical abuse, or the abuse occurred many years before or after the allegations of sexual abuse, such evidence cannot be logically held to have caused the victim to delay reporting and is therefore not relevant under ER 404(b).
¶ 71 In this case the evidence showed that the defendant physically abused Melanie, her sister (Brittany), and her brother (Brett), over the course of two years. It was during these two years that Melanie alleges the sexual abuse occurred. The trial judge ruled that the evidence would be allowed to "explain the delay in reporting." Verbatim Report of Proceedings at 190. Evidence that Fisher physically abused Melanie, her brother and sister, as well as Tyler (Fisher's biological son), during this two year time period in which the children lived together, is sufficiently, temporally related to her claim of sexual abuse. The close nexus between the physical abuse and the sexual abuse makes the evidence of physical abuse relevant to explaining her delay in reporting. Based on its relevance and probative value, the trial court was within its discretion to admit this evidence.
¶ 72 In contrast, evidence that the defendant physically abused Tyler six years before he lived with Melanie is not sufficiently, temporally related to be considered relevant to the allegations of sexual abuse. Though she may have been aware of defendant's past behavior, she was not a witness to it and the abuse did not occur near the time of the sexual abuse. This evidence fails to meet the relevance standard in ER 404(b). Lacking relevance, the evidence lacked probative value and served only to prejudice Fisher. The trial court therefore abused its discretion in admitting evidence that Fisher had abused his biological son six years prior to the time he allegedly sexually assaulted Melanie.
¶ 73 Evidence that the defendant physically abused his current stepchildren, Shelby and Ashland, is also not sufficiently, temporally related to be relevant to Melanie's allegations of sexual abuse. At the time of these incidents, Fisher no longer had contact with Melanie. Fisher's abusive actions toward unrelated children more than six years after the sexual abuse is said to have occurred could not have affected Melanie's decision to delay reporting. I agree with the majority that evidence of this abuse fails to meet the relevance standard of ER 404(b) and only served to prejudice Fisher. The trial court therefore abused its discretion in admitting evidence that Fisher abused his current stepchildren six years after the time he allegedly assaulted Melanie.
¶ 74 While I believe admitting evidence of physical abuse against Fisher's current step-children and against his biological son occurring six years before the alleged molestation was error, it was cumulative of other properly admitted evidence of physical abuse against the children. Thus, standing alone, admission of this evidence does not require reversal.

Prosecutorial Misconduct
¶ 75 Although the majority agrees that the trial court properly ruled that evidence Fisher physically abused Melanie, Brett, and Brittany would be admissible to explain delay, the majority faults the prosecutor for "preemptively introducing the evidence," thereby failing to use the evidence "for its *955 intended purpose."[3] Majority at 947. The majority's criticism is based on its belief that "defense counsel never made an issue of Melanie's delay in reporting." Id. at 948. The majority is mistaken.
¶ 76 First, in their briefing, defense counsel plainly acknowledges Melanie "testified that she delayed reporting because she was afraid of Mr. Fisher." Suppl. Br. of Pet'r at 11. In addition, the record reveals that during opening argument, defense counsel questioned Melanie's failure to report the sexual abuse to a police officer in July 1999 and told the jury that Melanie would likely acknowledge this failure to report the sexual abuse by saying she was "embarrassed and fearful." Suppl. Clerk's Papers (SCP) at 171. He then argued that "Melanie is gonna say that this happened, basically, every day and it was so traumatic she had no social life.... [W]e will be asking Melanie about the 58 some-odd pages of entries that she made ... how she could make all of those entries in this diary without ever mentioning Mr. Fisher." SCP at 177-78.
¶ 77 Because the defense questioned Melanie's delay in reporting during opening argument, it was proper for the prosecution to introduce the ER 404(b) evidence that the trial court had determined would be relevant if the delay in reporting was made an issue.
¶ 78 Moreover, throughout the trial, defense counsel continued to make Melanie's failure to report a major issue:
[Defense counsel]: I think you know where I'm going. You wrote a diary, correct?
[Melanie]: Yes.
[Defense counsel]: In the diary, do you talk about the sexual abuse?
[Melanie]: No, I do not.
[Defense counsel]: Do you talk about the threats?
[Melanie]: No.
[Defense counsel]: Do you talk about the sex?
[Melanie]: No.
[Defense counsel]: To Officer Manthey, you said that  did you say that he [Fisher] was physically abusive to you or to your family?
[Melanie]: It was to all of us.
[Defense counsel]: Okay. But so at that point in time, you didn't say he is physically abusive to me?
[Melanie]: Yes.
[Defense counsel]: Okay. What kind of abuse were you talking about then?
[Melanie]: Physical.
[Defense counsel]: Which acts?
[Melanie]: The punching, the hitting, the bashing our heads together.
[Defense counsel]: The punch to the shoulder? The hits to the head?
[Melanie]: Yes.
[Defense counsel]: The time your and Brett's heads came together?
[Melanie]: Yes.
[Defense counsel]: So to some extent, you told Officer Manthey about physical abuse?
[Melanie]: Yes.
[Defense counsel]: You felt comfortable talking about the physical abuse in front of the officer, correct?
[Melanie]: Yes.
[Defense counsel]: How about the threats? Did you say he threatened me that he would hurt us much worse if we told?
[Melanie]: I don't remember.
[Defense counsel]: What's your best 
[Melanie]: Probably.
[Defense counsel]: Probably you told Officer Manthey that you were threatened if you told?
[Melanie]: Yes.
[Defense counsel]: All right. How about sex?
[Melanie]: No.
[Defense counsel]: All right. Jenna was your best friend, according to your diary?
[Melanie]: Yes.

*956 [Defense counsel]: Did you tell her about the physical abuse?
[Melanie]: She knew a little bit about it, yes.
[Defense counsel]: So a little. How about the threats?
[Melanie]: No.
[Defense counsel]: How about the sex?
[Melanie]: No.
[Defense counsel]: I'm restricting this with your mom prior to March 2003, because we know you told your mom and then the police got called.
[Melanie]: Okay.
[Defense counsel]: Prior to March of 2003, did you tell your mom about the physical abuse?
[Melanie]: No
[Defense counsel]: Not at all?
[Melanie]: (Shakes head from side to side). 2003?
[Defense counsel]: Yeah.
[Melanie]: She knew about it when we did the police report, yes.
[Defense counsel]: Okay. That's what I was looking for....
. . . .
[Defense counsel]: So you told your mom about the physical abuse. How about the threats? Did you tell your mom?
[Melanie]: Yes.
[Defense counsel]: And that's prior to March 2003?
[Melanie]: No.
[Defense counsel]: At the time, had you forgotten about this alleged abuse or did you just choose not to tell?
[Melanie]: At what time, sir?
[Defense counsel]: Prior to March of 2003.
[Melanie]: I remembered it. I just chose not to tell.
[Defense counsel]: Okay. Did your mother ever follow up, after 1999, but before 2003, and say what else happened? Did he ever molest you in any way?
[Melanie]: No.
[Defense counsel]: Your answer to that was no?
[Melanie]: Yes.
[Defense counsel]: So you never lied to your mother?
[Melanie]: She never really asked about it. We never talked about it.
[Defense counsel]: Did Jenna ever ask you if there was anything sexual?
[Melanie]: No.
[Defense counsel]: So basically you didn't lie to Jenna, correct?
[Melanie]: That's correct.
[Defense counsel]: In the diary, you make no mention of any of this. But a diary is not gonna ask you, so you didn't actually lie in your diary?
[Melanie]: No.
[Defense counsel]: And then, what's your best guess as to this officer? Did you lie to the officer?
[Melanie]: If he asked me. I cannot even tell you if he asked me the question. I don't know.
SCP at 315-19.
¶ 79 Clearly, defense counsel's opening statement and cross-examination directly called into question Melanie's credibility based on failure to report the sexual abuse at the time it occurred, raising the issue of her delay in reporting the allegations of sexual abuse. Unlike the majority, I cannot find the prosecutor violated the trial court ruling conditioning admission of physical abuse evidence on defense counsel making an issue of Melanie's delayed reporting.
¶ 80 I also disagree with the majority's view that the prosecutor violated the court's directive as to the use to be made of the physical abuse evidence. Majority at 948. Defense counsel failed to request a limiting instruction be given to the jury regarding any of the physical abuse evidence. Where a trial court has determined one purpose for admitting ER 404(b) evidence, it is incumbent upon the party against whom the evidence is admitted to request a limiting instruction: "When evidence is admissible ... for one purpose," such as to prove the victim's state of mind or a delay in reporting, "the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly." ER 105 (emphasis added). *957 Failure to request a limiting instruction renders the evidence available to both parties for all purposes. Lockwood v. AC & S, Inc., 109 Wash.2d 235, 255, 744 P.2d 605 (1987) ("Absent a request for a limiting instruction, evidence which is admitted as relevant for one purpose is deemed relevant for others."); State v. Newbern, 95 Wash.App. 277, 295-96, 975 P.2d 1041 (1999) ("A party's failure to request a limiting instruction constitutes a waiver of that party's right to such an instruction and fails to preserve the claimed error for appeal.").
¶ 81 Washington courts have held that evidence of prior physical abuse of either a victim or her family members is admissible to "rebut the implication that the molestation did not occur," State v. Grant, 83 Wash.App. 98, 106, 920 P.2d 609 (1996), and to show "that the physical abuse was part of a larger scheme or plan of sexual abuse." Wilson, 60 Wash.App. at 890, 808 P.2d 754. Defense counsel's failure to request an instruction to the jury limiting use of the physical abuse evidence to explaining the delay in reporting renders the evidence available for these purposes as well as any "other purpose[]" that fits within the scope of the exceptions in ER 404(b).
¶ 82 Defense counsel argues that our case law "requires the proponent of the evidence to establish its admissibility outside the presence of the jury and for the court to balance the relevance of the evidence prior to admission." Suppl. Br. of Pet'r at 11. This is a correct statement of the law. However, in Fisher's case the court held an evidentiary hearing outside the presence of the jury at which defense counsel was present and made arguments regarding the evidence offered by the prosecution. Defense counsel knew the prosecution was going to elicit testimony regarding Fisher's abuse of Melanie and her siblings. Defense counsel had every reason to know of the need to request a limiting instruction. Because Fisher failed to request a limiting instruction, the prosecutor here was entitled to argue all reasonable inference from evidence properly admitted.

Propensity Argument by the Prosecutor
¶ 83 The majority also holds the prosecutor committed reversible misconduct when he invited the jury to convict Fisher of sexually abusing Melanie based on Fisher's propensity for physically abusing Melanie and the other children. Majority at 947-48. While I agree that this argument was improper, I do not agree that the conduct was so "`"flagrant and ill-intentioned"'" that it evinced an "`"enduring and resulting prejudice"'" against Fisher that could not have been neutralized by an appropriate instruction to the jury. Majority at 947 (quoting State v. Gregory, 158 Wash.2d 759, 841, 147 P.3d 1201 (2006) (quoting State v. Stenson, 132 Wash.2d 668, 719, 940 P.2d 1239 (1997))).
¶ 84 As the majority notes, when objected to, prosecutorial misconduct is grounds for reversal where there is a "substantial likelihood the improper conduct affected the jury." Majority at 947 (citing State v. Belgarde, 110 Wash.2d 504, 508, 755 P.2d 174 (1988)). Where a defendant does not object to prosecution comments, any resulting error is waived "unless the remark is so flagrant and ill intentioned that it causes an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury." State v. Russell, 125 Wash.2d 24, 86, 882 P.2d 747 (1994).
¶ 85 Fisher did not object during the prosecutor's closing argument. The majority excuses this failure by holding that defense counsel's standing objection during trial, combined with the trial court's pretrial ruling on the admissibility of the evidence, suffices to preserve the issue on appeal. Majority at 947-48. I disagree. The majority's holding relieves the defendant of the duty to timely and clearly object to offending arguments. See 13 ROYCE A. FERGUSON, JR., WASHINGTON PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 4505, at 295 (3d ed. 2004) ("If either counsel indulges in any improper remarks during closing arguments, the other must interpose an objection at the time they are made. This is to give the court an opportunity to correct counsel, and to caution the jurors against being influenced by such remarks."); State v. Weber, 159 Wash.2d 252, 271-72, 149 P.3d 646 (2006) (were a party not required to object, "`[a] party so situated could simply lie back, not allowing the trial *958 court to avoid the potential prejudice, gamble on the verdict, and then seek a new trial on appeal.'" (quoting State v. Sullivan, 69 Wash.App. 167, 173, 847 P.2d 953 (1993))).
¶ 86 The standing objection at issue was made after a defense objection to the admission of ER 404(b) evidence during the prosecutor's cross examination of Mr. Fisher.[4] SCP at 759. Overruling the objection during a bench conference, the judge stated that while it would be confusing to ask Mr. Fisher if he was the common denominator in all of the children's accusations, "[y]ou could certainly argue it in argument, what you feel the common link and I think that is probably more appropriate." Id. at 760. To which defense counsel replied: "I object to it at that point then, also, Judge. Could we have a standing objection on that then, Judge?" Id.
¶ 87 The "standing objection," never ruled on by the trial court, cannot stand in the place of an objection timely made during closing argument to a specific statement by the prosecutor. It is the trial court's ruling on a specific issue that allows this court to consider the issue on appeal. Bellevue Sch. Dist. No. 405 v. Lee, 70 Wash.2d 947, 950, 425 P.2d 902, 904 (1967) ("The trial court must have an opportunity to consider and rule upon a litigant's theory of the case before this court can consider it on appeal.") (citing, inter alia, State v. Morris, 70 Wash.2d 27, 422 P.2d 27 (1966)); see State v. Moen, 129 Wash.2d 535, 547, 919 P.2d 69 (1996) ("[T]he purpose of requiring an objection in general is to apprise the trial court of the claimed error at a time when the court has an opportunity to correct the error."). Because the defendant did not object to specific statements, when the statements were made, the trial court never had the opportunity to determine if the statement was a "reasonable inference[] from the evidence," Gregory, 158 Wash.2d at 818, 147 P.3d 1201, or a "bald appeal[] to passion and prejudice." Majority at 947 (citing Belgarde, 110 Wash.2d at 507-08, 755 P.2d 174).
¶ 88 Further, the trial court's pretrial ruling on the admissibility of evidence cannot stand in the place of a proper objection to the prosecutor's use of the evidence during closing. The majority's holding again relieves the defendant of the duty to request a limiting instruction and places a burden on the prosecutor to impose a limitation that was not ordered by the trial court.[5]
¶ 89 The majority relies on Clark to support its position that defense counsel "was not required to request a limiting instruction." Majority at 947-48 n. 4 (citing State v. Clark, 48 Wash.App. 850, 865 n. 3, 743 P.2d 822 (1987)). But, in Clark the Court of Appeals followed the rule of ER 105 and held that absent a request for a limiting instruction "error is waived...." Clark, 48 Wash. App. at 865 n. 3, 743 P.2d 822. The Clark court held that even assuming introduction of ER 404(b) evidence violated the "`ground rules'"[6] established prior to trial, there was "no basis for relieving [the defendant] of the obligation to request a curative instruction." Id.
¶ 90 Though I find that the defendant had a duty to request a limiting instruction as well as a duty to timely object to offending argument, I agree that certain of the prosecutor's statements in closing arguments were nonetheless improper. A prosecutor's invitation to convict a defendant on propensity is never appropriate argument.[7] ER 404. But, *959 this does not mean the prosecutor's argument was flagrant and ill intentioned. The prosecutor's theory of the case was that Fisher's sexual abuse was simply an advanced form of physical punishment. From the beginning he argued that the evidence would show Fisher's punishment of Melanie progressed from physical to sexual when he decided that "she was too old for spankings." SCP at 163.
¶ 91 The majority, however, finds the argument to be flagrant and ill intentioned because "the prosecuting attorney was well aware of the trial court's ruling and Fisher's standing objection." Majority at 947-48 n. 4. Although I doubt that "awareness" of the pretrial ruling admitting evidence and the standing objection made in this case is enough to demonstrate flagrant and ill intentioned conduct by the prosecutor, the defendant's failure to request a limiting instruction must also be factored in, as well as the State's theory of the case. With these factors in mind, it is difficult to determine what, exactly, the prosecutor should have been "aware of" when there was no limiting instruction or when the defendant said, "I object to it at that point then, also, Judge," during a midtrial cross-examination. SCP at 760. Had the defendant objected at the time the prosecutor made the offending statements, the trial court could have made a ruling, the prosecution would have known exactly what the defendant found objectionable, and the opportunity to cure the prejudice would have not passed. Id. at 863-64, 743 P.2d 822.
¶ 92 Viewed in the context of the entire trial, and in light of the defendant's failure to object or request a limiting instruction, I do not believe that the prosecutor's comments during closing argument evinced an "enduring and resulting prejudice." In my view, reversal is not warranted on this issue standing alone.

Improper Gestures by Prosecutor
¶ 93 Unfortunately, the errors in Fisher's trial do not end with the improper admission of past unrelated abuse and an improper propensity argument. Five people in attendance during Fisher's trial have stated they observed the prosecuting attorney make gestures or facial expressions during the defense's closing arguments. The gestures include, "raising his arms/hands as if in disbelief," Clerk's Papers at 78, "shaking his head in a negative manner," id. at 79, and "striking his forehead with the palm of his hand as if amazed at [defense counsel's] statements." Id. at 80. The facial expressions include, "making facial expressions of disbelief while facing towards the jury," id. at 79, and "wincing" and "rolling is [sic] eyes." Id. at 77.
¶ 94 As the Court of Appeals notes, "[a] prosecutor should refrain from personally attacking defense counsel, impugning the character of the defendant's lawyer, or disparaging defense lawyers in general as a means of imputing guilt to the defendant." State v. Fisher, noted at 136 Wash.App. 1009, 2006 WL 3462183, *7 (citing State v. Reed, 102 Wash.2d 140, 145-46, 684 P.2d 699 (1984); United States v. McDonald, 620 F.2d 559, 564 (5th Cir.1980)). The prosecutor's facial expressions and gestures in this case were clearly improper. However, as with the other errors in this trial, standing alone it is unlikely these gestures would have so prejudiced the defendant as to have affected the jury.

Cumulative Error Doctrine
¶ 95 The cumulative error doctrine applies to cases in which "there have been several trial errors that standing alone may not be sufficient to justify reversal but when combined may deny a defendant a fair trial." State v. Greiff, 141 Wash.2d 910, 929, 10 P.3d 390, 399-400 (2000) (citing State v. Coe, 101 Wash.2d 772, 789, 684 P.2d 668 (1984); State v. Badda, 63 Wash.2d 176, 183, 385 P.2d 859 (1963) (three instructional errors and the prosecutor's remarks during voir dire required reversal); State v. Alexander, 64 Wash.App. 147, 158, 822 P.2d 1250 (1992) (reversal required because (1) a witness impermissibly suggested the victim's story was consistent and truthful, (2) the prosecutor impermissibly elicited the defendant's identity from the victim's mother, and (3) the prosecutor repeatedly attempted to introduce inadmissible testimony during the trial and *960 in closing); State v. Whalon, 1 Wash.App. 785, 804, 464 P.2d 730 (1970) (reversing conviction because (1) court's severe rebuke of the defendant's attorney in the presence of the jury, (2) court's refusal of the testimony of the defendant's wife, and (3) jury listening to tape recording of lineup in the absence of court and counsel)).
¶ 96 While I do not believe any of the errors in Fisher's trial standing alone would merit reversal of his conviction, taking the errors into consideration as a whole, I am left with the abiding belief that he did not receive a fair trial. I concur in the judgment of the majority that Fisher's conviction should be overturned.
NOTES
[1] "Prosecutorial misconduct" is a term of art but is really a misnomer when applied to mistakes made by the prosecutor during trial. If prosecutorial mistakes or actions are not harmless and deny a defendant fair trial, then the defendant should get a new one. Attorney misconduct, on the other hand, is more appropriately related to violations of the Rules of Professional Conduct.
[2] Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

ER 404(b).
[3] ER 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."
[4] It is because of these acts that defense counsel was not required to request a limiting instruction regarding the ER 404(b) evidence in order to preserve his argument for appellate review. This court has held the losing party to a pretrial evidentiary ruling "is deemed to have a standing objection where a judge has made a final ruling on the motion, `[u]nless the trial court indicates that further objections at trial are required when making its ruling.'" State v. Powell, 126 Wash.2d 244, 256, 893 P.2d 615 (1995) (alteration in original) (quoting State v. Koloske, 100 Wash.2d 889, 895, 676 P.2d 456 (1984), overruled on other grounds by State v. Brown, 111 Wash.2d 124, 761 P.2d 588 (1988)). Here, ruling against Fisher, the trial court made a final ruling that the ER 404(b) evidence would be admitted if defense counsel made an issue of Melanie's delayed reporting. Defense counsel then took the additional step of making a standing objection prohibiting the prosecuting attorney from using the evidence during closing argument, thereby ensuring that the issue could be reviewed on appeal. Moreover, given the nature of the misconduct and the fact that the prosecuting attorney was well aware of the trial court's ruling and Fisher's standing objection, we do not believe that any limiting instruction could have neutralized the prejudicial effect. See State v. Clark, 48 Wash.App. 850, 865 n. 3, 743 P.2d 822 (1987) (stating that unobjected prosecutorial misconduct "is waived unless the prosecutor's actions are deemed flagrant and ill intentioned and the resulting prejudice so enduring that the effect could not be neutralized by a jury admonition.").

We must note that this case demonstrates how standing objections can cause headaches when on appellate review. It is far easier for the appellate bench and bar to analyze the merits of an objection that has been ruled upon by the trial court at the moment of the transgression than to parse through the record to determine when an error occurred and whether the trial court and parties properly analyzed the issue.
[5] Because we are already reversing and remanding for a new trial, we need not analyze whether the admission of this evidence constitutes reversible error.
[6] Fisher sought to admit evidence that Ward refused to sell their family home and filed for bankruptcy to avoid paying the divorce judgment. SCP at 447-48.
[7] Fisher maintains the jury's confusion regarding the number of counts exposes the constitutional deficiency of the instructions. During deliberation, the jury asked the judge, in writing, "Why are there 4 counts? Why not 3 or 6? What was basis for 4 counts?" CP at 108. The court answered, "You must rely on the instructions already given to you by the Court." Id. Fisher is correct that the note indicates confusion. However, the note does not necessarily demonstrate that the jury did not understand its instruction to find him guilty beyond a reasonable doubt in unanimity. The jury note simply inquires as to how the prosecution decided to charge four counts of child molestation.
[8] Fisher argues several prosecutorial mistakes denied him effective assistance of counsel. However, none of the cases cited by Fisher support the notion that prosecutorial misconduct implicates the ineffective assistance of counsel doctrine. See State v. Jury, 19 Wash.App. 256, 576 P.2d 1302 (1978); Bruno v. Rushen, 721 F.2d 1193 (9th Cir.1983); State v. Swan, 114 Wash.2d 613, 790 P.2d 610 (1990). As discussed earlier, prosecutorial misconduct is a term of art referring to prejudicial errors committed by the prosecuting attorney that deny the defendant a fair trial. Accordingly, we review Fisher's claims under the prosecutorial misconduct standard of whether there is a substantial likelihood the prosecuting attorney's improper conduct affected the jury. Gregory, 158 Wash.2d at 858, 147 P.3d 1201.
[1] The court in Powers noted that there are "no federal decisions under Rule 404(b) addressing the admissibility of physical violence against a victim and members of the family in a sexual abuse case." Powers, 59 F.3d at 1465 n. 3. The court goes on to note that because of the narrow federal criminal jurisdiction in these cases, federal courts "look to state law for its persuasive force where applicable." Id.
[2] The Wilson court discussed the relevance of the physical abuse under ER 401 and ER 402. Whether discussed separately under ER 401 and ER 402 or as part of the three-step analysis for allowing ER 404(b) evidence, the test as to whether or not physical abuse is relevant to a charge of sexual abuse is the same. Wilson, 60 Wash.App. at 890, 808 P.2d 754.
[3] The majority states that Fisher argues "the State committed misconduct in its presentation of the ER 404(b) evidence." Majority at 947. However, Fisher only argued that the prosecutor committed "misconduct in eliciting additional 404(b) evidence without seeking permission outside the presence of the jury" not that previously admitted ER 404(b) evidence was improperly preemptive. Suppl. Br. of Pet'r at 13 (emphasis added).
[4] While attempting to establish that Fisher created a "point system" of physical punishment for all of the children similar to the "point system" of sexual punishment Melanie testified to, the prosecutor asked: "Mr. Fisher, with all of these accusations, all of these acts, what is the one common denominator?" SCP at 759. To which defense counsel objected: "At this point, Rule 404(b) should not be abused in such a fashion any longer." Id.
[5] If the court's ruling on admissibility becomes an "order" that must be obeyed, what is the purpose of a rule requiring the defendant to request a limiting instruction?
[6] The "`ground rules'" in Clark were based on repeated agreements by both sides "that evidence of prior bad acts would not be introduced without prior court clearance." Clark, 48 Wash. App. at 865, 743 P.2d 822.
[7] "The law is not comfortable with the notion that once a criminal, always a criminal." 5 KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 404. 10, at 498 (5th ed.2007).