FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2018 OCT 22 AM 8: 29



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON | ) | No. 76005-0-I |
| | ) | |
| | ) | DIVISION ONE |
| Respondent, | ) | |
| | ) | UNPUBLISHED OPINION |
| v. | ) | |
| | ) | |
| JASON LEE GAMACHE, | ) | |
| | ) | |
| Appellant. | ) | FILED: October 22, 2018 |
| | ) | |

BECKER, J. — Jason Gamache was convicted of felony murder. The evidence showed that he broke into the home of a sleeping neighbor and stabbed him to death in the course of stealing his pain medication. We affirm.

## FACTS

On the morning of August 2, 2013, Wayne McCune's wife left their home around 7:00 a.m. to go to work. When she returned around 6:00 p.m., she found McCune lying dead on the floor. McCune had been stabbed 25 times and his carotid artery was severed. The file cabinet drawer where McCune kept his pain medication had been forced open. Two pill bottles, containing hydrocodone-acetaminophen and Avinza, were found empty.

Auburn police interviewed McCune's neighbor, Ruby Jo Brazeal. She told them Jason Gamache had been staying with her, but she had not seen him since the day of McCune's death. Gamache, Brazeal, and McCune all suffered from chronic health conditions, and regularly took prescription pain medication. In the

past, McCune and Gamache had shared medications. They had a falling out in 2012 when Gamache tried to take some of McCune's pain medication without permission. Since that time, the two had not had any contact.

The police pieced together Gamache's whereabouts on the day of McCune's death. Gamache met Brazeal at the nearby Muckleshoot Casino just before 9:00 a.m. He told her he was leaving to pick up pain medication from the pharmacy. Surveillance video showed Gamache leaving the casino at 9:01 a.m. and returning at 10:35 a.m. When he returned, he was wearing different clothes. Gamache then offered Brazeal roughly 15 hydrocodone-acetaminophen pills and a pill bottle containing granules from an Avinza capsule. Gamache remained at the casino until 5:30 p.m. that day.

After leaving the Muckleshoot Casino, Gamache traveled to the Snoqualmie Casino. Surveillance video showed that Gamache largely remained in his vehicle in the casino parking lot over the next five days, until he approached a shuttle bus driver complaining of pain and dizziness. An ambulance took him to a nearby hospital where Gamache told a doctor that he had been mugged. After being treated for dehydration, Gamache left the hospital and walked back to his vehicle at the Snoqualmie Casino. Officers located him there on August 7 and arrested him.

In Gamache's vehicle, officers found a single Avinza tablet and a rag containing what appeared to be blood. Blood on the rag was consistent with McCune's DNA (deoxyribonucleic acid). A blood stain found on Gamache's shoe

2

was also consistent with McCune's DNA. The shirt Gamache was wearing when he left the Muckleshoot Casino on the morning of the murder was never located.

Gamache initially denied that he had left the Muckleshoot Casino for an hour and a half that morning. Informed that the casino surveillance video contradicted his statement, Gamache changed his story and told police that he left to go to a nearby secondhand store. The store's video surveillance did not show Gamache at the store. Gamache gave conflicting statements to the police about the clothes he was wearing on the day of the murder and his whereabouts in the five days following the murder.

The State charged Gamache with felony murder in the first degree predicated on both second degree robbery and attempted second degree robbery. After a four week trial, the jury convicted Gamache as charged. He was sentenced to 280 months.

### Sufficiency of the Evidence

Gamache's first challenge is to the sufficiency of the evidence supporting felony murder. "The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." State v. Kintz, 169 Wn.2d 537, 551, 238 P.3d 470 (2010). "'When the sufficiency of the evidence is challenged in a criminal case, all reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant.'" Kintz, 169 Wn.2d at 551, quoting State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Although Gamache contested the

State's evidence at trial, the presence of conflicting evidence does not mean the guilty verdict was not supported by sufficient evidence. Reviewing courts "defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence." State v. Killingsworth, 166 Wn. App. 283, 287, 269 P.3d 1064, review denied, 174 Wn.2d 1007, 278 P.3d 1112 (2012).

To convict Gamache of felony murder, the State had to establish that Gamache killed McCune "in the course of or in furtherance" of a predicate felony, or "in immediate flight therefrom." RCW 9A.32.030(1)(c)(5). The homicide must be within the "res gestae" of the predicate felony, i.e., "there was a close proximity in terms of time and distance between the felony and the homicide." State v. Leech, 114 Wn.2d 700, 706, 790 P.2d 160 (1990). Moreover, the State must prove "'that the death was a probable consequence of the felony and must specifically prove that the felony began before the killing.'" State v. Wang, __ Wn. App. __, 424 P.3d 1251, 1257 (2018), quoting State v. Irby, 187 Wn. App. 183, 201, 347 P.3d 1103 (2015), review denied, 184 Wn.2d 1036, 379 P.3d 953 (2016).

Gamache argues that any connection between him, McCune's death, and the robbery of McCune's pills was purely speculative, and therefore the State could not show that McCune's death was a consequence of the robbery. Gamache disregards the extensive evidence—circumstantial, but not speculative—that he forcibly took McCune's pills and McCune died in the course of the robbery. The drawer holding McCune's medication was found pried open, while the rest of McCune's home appeared to be left undisturbed. Gamache

4

knew where McCune kept his medication. Gamache knew he was not welcome in McCune's home. Gamache had no reason to enter McCune's home other than to obtain McCune's pain medication.

Two bottles of pills were empty, and on the day of McCune's murder, Gamache provided Brazeal with pills matching those missing from McCune's home. When questioned by police, Gamache repeatedly lied about his whereabouts on August 2. Gamache also lied about the shirt he was wearing when he left the casino.

Gamache had blood matching McCune's DNA profile on his shoes and on a rag in his car. At trial, the State's forensic scientist testified the blood "matches the DNA profile of Wayne McCune. The estimated probability of selecting an unrelated individual at random from the United States population with a matching profile is 1 in 260,000." The State's forensic scientist stated that "the DNA typing profile obtained from the bloodstains on the right shoe was consistent with coming from a male individual, and matches the DNA profile of Wayne McCune. And the estimated probability of selecting an unrelated individual at random from the United States population with a matching profile is 1 in 850 quadrillion." DNA found on McCune's empty hydrocodone-acetaminophen bottle was also consistent with a mixture of McCune's and Gamache's DNA. It was "230 times more likely that the observed DNA profile occurred as a result of a mixture of Wayne McCune and Jason Gamache than if it originated from Wayne McCune and an unrelated individual selected at random from the United States population."

We conclude there was sufficient proof that Gamache killed McCune in the course of robbing him.

The court allowed the jury to consider attempted robbery as well as robbery as the predicate for felony murder. Gamache argued that the evidence was insufficient to support a finding of attempted robbery because there was no way the jury could find that he fatally stabbed McCune with the intent to steal his pills, yet failed to complete the theft of the pills. Gamache contends the jury may not have been unanimous as to the means by which he was guilty of felony murder, and reversal is the required result. See State v. Lambert, 199 Wn. App. 51, 78, 395 P.3d 1080, review denied, 189 Wn.2d 1017, 404 P.3d 499 (2017) (reversing felony murder conviction due to insufficient evidence to support the alternative means of the predicate burglary).

It does not appear that an attempt is an alternative means of committing the completed crime. An attempt to commit a crime is defined as an offense included in the crime itself. RCW 10.61.010. In any event, the evidence was sufficient to prove Gamache either attempted a robbery or completed a robbery. Contrary to Gamache's claim, there is no authority holding that a conviction for attempt can be sustained only if the crime is not completed. Rather, to prove an attempt, the State must simply show that the defendant acted with the intent to carry out a crime and took a substantial step towards the completion of that crime. RCW 9A.28.020. As discussed above, the State presented substantial evidence from which a juror could infer that Gamache took the substantial step of entering McCune's home with the intent to take his pain medications. A

6

reasonable juror could have found that Gamache at least tried to rob Wayne of pills and killed him in the course of that attempt, even if the juror lacked certainty that Gamache actually had McCune's pills with him when he left the house.

Viewing the evidence in the light most favorable to the State, we conclude it was sufficient to prove that Gamache caused McCune's death in the course of robbing or attempting to rob him.

### Detective Lind's Testimony

Gamache contends he was prejudiced by the admission of evidence regarding the 2012 incident in which he tried to take McCune's pain pills without permission. A pretrial hearing was held to determine the admissibility of the evidence. Auburn Detective David Lind testified that on January 9, 2012, some 18 months before the murder, he was dispatched to respond to a call from McCune. Lind said McCune told him that Gamache came into his home while McCune was sleeping and attempted to take his pain medication. According to Lind, McCune said he and Gamache had similar back problems and had a history of sharing medication. McCune told Lind that he did not wish to press criminal charges, but he wanted Gamache to know he was no longer welcome on his property. Lind testified that he then went across the street to speak to Gamache. Gamache admitted that he had tried to take some pills when he found McCune asleep and realized, when McCune woke up, that he had probably crossed a line. Lind said Gamache was apologetic. The incident ended with Lind informing Gamache that he was not welcome in McCune's home, and Gamache confirming that he understood.

After hearing Lind's testimony about Gamache's prior act, the trial court ruled it was admissible to show that Gamache knew where McCune kept his pills and knew McCune did not want Gamache in his house.

> And I'm satisfied the relevance of that is basically four things. One is that they shared medication. Secondly, from the statements of Mr. Gamache basically that Mr. McCune was asleep and it probably wasn't wise to take the pills. It goes to show that he knew where the pills were kept by Mr. McCune. Third, that there was a disagreement or complaint and that, fourth, as a result of that, the officer basically trespassed Mr. Gamache from the McCune residence.

At trial, Lind's testimony about his communications with McCune was kept to a minimum. At the start of Lind's direct examination, the prosecutor specifically requested that Lind not get into the specifics. Lind testified that McCune discussed a dispute he was having with Gamache over pain medication. "I was told basically that it was a neighbor dispute and that Wayne wanted to try and keep things civil amongst neighbors. And rather than going down a road of prosecution and potentially jail, he wanted to try and keep things friendly and decided that it would be more civil in nature than criminal." Gamache did not object. Lind moved on to testify about what Gamache said: that he found McCune sleeping, that he went to get a pill out of the cabinet, that McCune woke up and was surprised, and that he now understood, as a result of the officer's visit, that whatever agreement he and McCune had as neighbors "was now over and that he no longer wanted him at his residence."

In closing, the prosecutor emphasized that the testimony was offered to show Gamache's knowledge:

> The Defendant knows where Wayne McCune keeps his drugs. He knows what drugs Wayne McCune has.

8

And that's exactly why that testimony from Officer Lind regarding that January 2012 incident, why that's important. When Officer Lind goes and talks to him, he admits -- he, being Mr. Gamache, admits that he knew where Wayne kept his drugs. He knew what type of drugs he kept, that he shared at times. He knew how to let himself in the home to access those.

Gamache contends admitting Lind's testimony was error because the jury was able to use it as propensity evidence, the prejudice of the testimony outweighed its probative value, and there was no limiting instruction. He also contends Lind's testimony contained hearsay and a portion of it violated the confrontation clause.

Propensity

Under ER 404(b), "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." This court reviews the trial court's ruling to admit or exclude 404(b) evidence for an abuse of discretion. State v. Fisher, 165 Wn.2d 727, 745, 202 P.3d 937 (2009). We find no abuse of discretion in the admission of Lind's testimony as proof that Gamache knew where the pills were and knew that McCune was unwilling to share them with him.

A trial court may exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice. ER 403. This balancing of the probative value of a prior act versus its prejudicial effect should be done on the record. State v. Jackson, 102 Wn.2d 689, 693, 689 P.2d 76

(1984). The absence of a record may preclude effective appellate review. "Moreover, a judge who carefully records his reasons for admitting evidence of prior crimes is less likely to err, because the process of weighing the evidence and stating specific reasons for a decision insures a thoughtful consideration of the issue." Jackson, 102 Wn.2d at 694. Gamache contends admitting the evidence of his prior encounter with McCune was reversible error because the court did not conduct an express on-the-record balancing.

Failure to balance probative value versus prejudice on the record "requires reversal only if the error, within reasonable probability, materially affected the outcome of the trial." State v. Halstien, 122 Wn.2d 109, 126-27, 857 P.2d 270 (1993). If the record as a whole is sufficient to permit meaningful review, a reviewing court may affirm the introduction of ER 404(b) testimony. State v. Donald, 68 Wn. App. 543, 547, 844 P.2d 447, review denied, 121 Wn.2d 1024, 854 P.2d 1084 (1993).

Evidence of Gamache's prior attempt to take McCune's pills was highly probative. McCune's murderer pried open the cabinet where McCune kept his medication, while leaving other items of value untouched. The trial court correctly identified the relevant purpose for admitting evidence of Gamache's earlier confrontation with McCune. It established that Gamache knew the pills were kept in McCune's cabinet and that he did not have permission to be in McCune's home. The parties argued about whether the evidence was more probative than prejudicial. The court instructed the State not to refer to the act as a "theft", and the overall tenor of the hearing demonstrates the court's awareness

10

of the obligation to balance probative value against prejudice even if the court did not use those specific words. The manner in which the prior act was presented emphasized its relevance for this proper purpose.

To the extent the court erred in being less explicit than our case law requires, the error did not materially affect the outcome of the trial. The record as a whole is sufficient to permit meaningful review, and we conclude the court did not abuse its discretion in admitting evidence of the previous pill-taking incident under ER 404(b).

No Limiting Instruction

Gamache contends the trial court should have given a limiting instruction when Lind testified. Trial courts are not required to provide a limiting instruction sua sponte. State v. Russell, 171 Wn.2d 118, 124, 249 P.3d 604 (2011). Defense counsel stated, "We don't have a limiting instruction in mind at this moment, but we'll think about that . . . ." The defense did not offer a limiting instruction. Because Gamache did not request a limiting instruction, the trial court did not err by failing to give one.

Hearsay

In the pretrial hearing, the trial court recognized that Detective Lind's testimony about his conversation with McCune during the prior incident would be hearsay to the extent that he quoted what McCune said. But because the significant information about the confrontation would come in through the non-hearsay statements Gamache made to Lind, the court concluded there would be no hearsay problem:

11

[DEFENSE COUNSEL]: Your Honor, with respect to the hearsay, I would ask that when the officer goes to describe his contact with Mr. McCune that it be simply limited to, "We got a complaint from Mr. McCune," because anything else would just be --

THE COURT: Well, he basically contacted Mr. McCune and I think everything else is going to come out through the statements and the conversation he had with Mr. Gamache. So, but clearly Mr. McCune's statements to the officer are hearsay. The fact that he went there, received a complaint, and talked to the Defendant, and that the Defendant confirmed a lot of the things that I -- or all of the things, I think, that I've just indicated I'm finding relevant. It should be fairly brief, I would think.

By failing to object to the minimal amount of hearsay the officer included in his recounting of what McCune said, Gamache waived the hearsay issue. Even were that not the case, the admission of hearsay is subject to harmless error analysis. State v. Watt, 160 Wn.2d 626, 630, 160 P.3d 640 (2007). Gamache does not identify any meaningful prejudice resulting from Lind's brief discussion of his conversation with McCune.

Confrontation Clause

Gamache contends the admission of Lind's testimony about what McCune said violated the Confrontation Clause because he could not cross-examine McCune about the January 2012 incident. The confrontation clause "'bars admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination.'" State v. Koslowski, 166 Wn.2d 409, 417, 209 P.3d 479 (2009) (internal quotation marks omitted), quoting Davis v. Washington, 547 U.S. 813, 821, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006)).

Because Gamache did not raise an objection based on the confrontation clause, the alleged error is not preserved for review. State v. O'Cain, 169 Wn.

12

App. 228, 232, 279 P.3d 926 (2012). In addition, any error was harmless. See Watt, 160 Wn.2d at 635.

### Purpose of Arrest

Gamache claims the court erred by allowing the State to present an officer's testimony that Gamache was arrested on August 7 for "another matter." Although he classifies this as prosecutorial misconduct, it is properly characterized as another ER 404(b) issue.

In the wake of McCune's murder on August 2, 2013, Brazeal's husband realized his rifle was missing. Because Gamache was staying with the Brazeals, he became the prime suspect in the rifle's disappearance. The police issued an arrest bulletin for Gamache. When he was arrested at the Snoqualmie Casino on August 7, it was for theft of the rifle, not for murder. Ultimately, Gamache was not charged with stealing the rifle.

At trial, the parties grappled with how to describe the reason for Gamache's arrest. The evidence implicating him in the murder was largely undeveloped at the time of the arrest. The State was concerned that the jurors might think police improperly arrested Gamache based on a mere suspicion of murder if it was not explained that police had probable cause to arrest him for stealing a firearm. Gamache countered that testimony about an allegation of a stolen firearm was evidence of a prior bad act and inadmissible because it was irrelevant to the charge of murder. The trial court excluded mention of the firearm as more prejudicial than probative. The court ruled that instead, the jury

13

should simply be informed that the police arrested Gamache based on a bulletin about an unrelated crime.

Gamache objected that a vague reference to an arrest on a matter unrelated to the murder could lead the jury to speculate that he had been involved in another serious crime in addition to the murder. The trial court dismissed this concern as unrealistic:

> THE COURT: I think both the State and the defense are anticipating problems with the jury deliberation that aren't realistic. It is quite common, for example, when somebody's arrested for a warrant and then it leads to something, that the officers testify, we arrested him on something unrelated to this. And that's exactly what happened.

The officer who arrested Gamache at the Snoqualmie Casino testified that he did so as the result of a "be on the lookout" bulletin from the Auburn Police Department. The bulletin indicated that Gamache was "a person of interest in a homicide" and "that there was probable cause to arrest him on a separate matter."

We conclude the trial court was within its discretion to permit this testimony about the basis of the arrest. Investigation of the murder went on for another month before Gamache was charged. Part of the defense strategy at trial was to call into question the competence of the investigators. The State was legitimately concerned that if jurors were not informed there was a basis for the arrest other than suspicion that Gamache was involved in the murder, they would assume the Auburn police were "cowboys" who had arrested Gamache before they had developed probable cause.

14

Evidence is admissible under ER 404(b) to show the "res gestae" of a crime if it provides context for the jury to understand the sequence of events surrounding the crime. State v. Lane, 125 Wn.2d 825, 831, 889 P.2d 929 (1995). Under this exception to ER 404(b), a party may complete the picture of the story of the crime rather than having the jury receive a fragmented account. State v. Tharp, 27 Wn. App. 198, 204-05, 616 P.2d 693 (1980), aff'd, 96 Wn.2d 591, 637 P.2d 961 (1981). The admission of testimony that Gamache was arrested on "another matter" was not an abuse of discretion.

## Expert Testimony

Gamache argues that the State committed misconduct by leading an expert witness down a line of questioning aimed at improperly bolstering the expert's credibility.

The alleged misconduct occurred during the testimony of an associate medical examiner, Michelle Lubin. Lubin's initial estimate placed McCune's death in early afternoon. But Lubin testified that she could not rule out that McCune died during the 9:00 a.m. to 10:35 a.m. window when Gamache was unaccounted for. The prosecutor followed up by asking Lubin if her opinion was in line with medical literature and the policies and practices of her office:

> Q. Okay. And, then, everything that you've discussed regarding that window, last seen alive, when he's found dead, and sort of all the caveats of the post mortem indicators, is that in line with the reputable, medical literature that you're familiar with?
> A. Yes.
> Q. Is that in line with the practice of your colleagues at the King County Medical Examiner's Office?
> A. Yes, it is.
> Q. Meaning the other Associate Medical Examiners?
> A. Yes.

15

Q. And is that view and opinion in line with the practice and policies of the Chief Medical Examiner, Dr. Harruff?
A. Yes, it is.

Gamache contends Lubin gave improper opinion testimony. Because he did not object at the time, there is not a ruling by the trial court to which error can be assigned. Instead Gamache claims the prosecutor committed misconduct by eliciting the allegedly improper testimony.

The burden rests on the defendant to show conduct by a prosecutor was both improper and prejudicial. Fisher, 165 Wn.2d at 747. Once proved, prosecutorial misconduct is grounds for reversal when there is a substantial likelihood the improper conduct affected the jury. Defense counsel's failure to object to the misconduct at trial constitutes waiver on appeal unless the misconduct is so flagrant and ill-intentioned that it evinces an enduring and resulting prejudice incurable by a jury instruction. Fisher, 165 Wn.2d at 747.

The State may not use the hearsay statement of a third party to vouch for its witness. State v. Nation, 110 Wn. App. 651, 662, 41 P.3d 1204 (2002), review denied, 148 Wn.2d 1001, 60 P.3d 1212 (2003). Citing this rule, Gamache contends the prosecutor improperly elicited Lubin's testimony that the Chief Medical Examiner, Dr. Harruff, agreed with her opinion about McCune's time of death. The gist of the elicited testimony was that Lubin's analysis was "in line" with the practices and policies of her office. Although the final question included an unfortunate reference to Dr. Harruff's "opinion", it did not indicate that he had reviewed and approved Lubin's analysis in this case. And because an instruction

16

to the jury to disregard the remark could have cured any potential prejudice, Gamache waived the objection by failing to object.

## DNA Evidence

### Chain of Custody

Gamache attacks the DNA evidence linking Gamache to McCune and his pill bottle in part by arguing the pill bottle evidence should not have been admitted because the chain of custody was unsecured.

McCune stored his pill bottles in a filing cabinet. In the immediate aftermath of finding McCune's body, his wife believed some of his pills were missing, but she attributed their absence to her mistaken belief that McCune had taken them as part of a plan to commit suicide. After the police left the home, McCune's wife moved the pills to her sister's adjoining duplex so they would be out of the way for the people cleaning the crime scene.

An autopsy revealed that McCune was murdered and that he did not have any of the missing pills in his stomach. By this point, officers had learned of Gamache's history with McCune and that Gamache was missing since the day of the murder. Three days after the murder, officers went to McCune's home to gather his pain medications. McCune's wife gave them a bag containing the pill bottles she had collected. The officer labeled the bag and the pill bottles and processed them for evidence. When the bottles were tested, one contained DNA evidence implicating Gamache.

Gamache moved to suppress this evidence. He argued that the bottles had not been protected and any evidence they contained was unreliable. The

trial court denied the motion, ruling that the argument went to the weight of the evidence and not its admissibility.

> I am satisfied that the pill bottles as medication is packaged these days are readily identifiable pieces of evidence. It contains the name of the person for whom it's prescribed and they have other information concerning the medication itself, etcetera.

> I am satisfied that this is sufficiently documented by the photos and the fact that these are items that clearly contain information as to what they are. There are photos in the residence showing bottles present of the medication prescribed to Mr. McCune. I am satisfied it goes to the weight of the evidence as the trier of fact might give weight to this particular evidence.

> . . . .

> I am satisfied that there is sufficient chain of custody in terms of this readily identifiable item in the photos, that the arguments I think the Defense has they need to place to the jury either in cross or through witnesses. So the motion to suppress is denied.

"Before a physical object connected with the commission of a crime may properly be admitted into evidence, it must be satisfactorily identified and shown to be in substantially the same condition as when the crime was committed." State v. Campbell, 103 Wn.2d 1, 21, 691 P.2d 929 (1984), cert. denied, 471 U.S. 1094, 206 S. Ct. 2169, 85 L. Ed. 2d 526 (1985). "Evidence that is unique and readily identifiable may be identified by a witness who can state that the item is what it purports to be." State v. Roche, 114 Wn. App. 424, 436, 59 P.3d 682 (2002), citing 5 KARL B. TEGLAND, WASHINGTON PRACTICE § 402.31 (1999). "However, where evidence is not readily identifiable and is susceptible to alteration by tampering or contamination, it is customarily identified by the testimony of each custodian in the chain of custody from the time the evidence was acquired." Roche, 114 Wn. App. at 436. "The trial court is necessarily

vested with a wide latitude of discretion in determining admissibility." Campbell, 103 Wn.2d at 21.

Gamache contends the evidence at issue was inadmissible because of the high risk that it was contaminated. But as the State argues, the pill bottle "could have been contaminated in hundreds of ways between the 2nd and the 5th, but there is scant chance it was contaminated in the only way relevant to this case, i.e., with Gamache's DNA. Gamache was nowhere near the bottle between August 2 and August 5." Gamache's argument that the prosecutor committed misconduct by offering the evidence is not persuasive.

Characterization of the DNA Evidence

Gamache contends the prosecutor prejudicially overstated the strength of the State's DNA evidence.

The Maryland Supreme Court confronted a similar question in Whack v. State, 433 Md. 728, 732, 73 A.3d 186 (2013). In Whack, DNA evidence was taken from the scene of a murder. The chance of the DNA coming from an African-American individual other than the defendant was 1 in 172. Whack, 433 Md. at 737. In closing argument, the prosecutor asserted that the DNA established the defendant was at the scene, and claimed the 1 in 172 odds were essentially no different than 1 in 212 trillion odds. Whack, 433 Md. at 745-47. The trial court denied a defense motion for a mistrial. Whack, 433 Md. at 741. The Supreme Court reversed and remanded for a new trial, holding that the prosecutor's remarks "likely misled the jury to the prejudice of the accused." Whack, 433 Md. at 755.

In two similar cases cited by Gamache, prosecutors were found to have overstated the strength of DNA evidence. A one in three likelihood was ruled to be too statistically insignificant to support the prosecutor's assertion that the defendant's DNA was found in the victim's clothes in Duncan v. Commonwealth of Kentucky, 322 S.W.3d 81, 90 (Ky. 2010). When DNA evidence showed only that a defendant could not be excluded, it was reversible error for the prosecutor to claim the defendant's DNA was found at the scene. People v. Wright, 25 N.Y.3d 769, 776, 37 N.E.3d 1127 (2015).

Here, in opening statement, the prosecutor asserted that the DNA mixture taken from the pill bottle matched Gamache and McCune:

> And on one of those bottles, an empty bottle of Hydrocodone-Acetaminophen 10-325, on the lid, is a mixture of DNA. And that mixture of DNA matches a mixture of Wayne McCune and the defendant, Jason Gamache.

In closing, the prosecutor listed the DNA taken from the pill bottle as evidence against Gamache:

> You add all that up, his deception and lies, you add up the blood, the DNA on the shoes, the DNA on the mitt, DNA on the empty bottle, specific targeted robbery, the prior knowledge possessed by him. . . .
>
> So when you put that all together, who killed Wayne McCune?

The prosecutor further stated that the pill bottle contained a "mixture of DNA, Wayne McCune's and the Defendant's." In both the opening statement and closing argument, the prosecutor referred to the blood on the rag found in Gamache's vehicle as coming from McCune. The State's forensic expert testified that the blood on the rag "matches the DNA profile of Wayne McCune," with a 1 in 260,000 probability of selecting an unrelated individual at random with

a matching profile. For the DNA on the pill bottle, he said it was 230 times more likely than not to be from a mixture of McCune and Gamache than from McCune and an individual selected at random.

We agree with Gamache that the discussion of DNA evidence must be handled with care. "DNA is a powerful tool and its importance in the courtroom cannot be overstated." Whack, 433 Md. at 732. A prosecutor's statements must be considered within the larger context in which DNA evidence is treated by jurors. Whack, 433 Md. at 747. In this case, the prosecutor's description of the DNA evidence was not as overstated as in the cases cited by Gamache, but it did go beyond the expert testimony offered at trial because the prosecutor omitted the statistical probability stated by the expert. To say that the DNA evidence "matches" the defendant without addressing the statistical qualification stated by the expert is potentially misleading. But Gamache did not object to the alleged overstatement of the evidence. Because the prosecutor's alleged misstatements were neither flagrant nor incurable, the issue is waived. Fisher, 165 Wn.2d at 747.

Ineffective Assistance of Counsel

Gamache alleges that his trial counsel provided ineffective assistance by failing to object. A claim of ineffective assistance counsel requires a showing of deficient performance and prejudice. State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). "Courts engage in a strong presumption counsel's representation was effective." McFarland, 127 Wn.2d at 335.

Gamache claims defense counsel was ineffective by failing to object to Officer Lind's testimony about what McCune said on grounds that it violated the confrontation clause, by failing to object to the prosecutor's characterization of DNA evidence, and by failing to object that the prosecutor improperly bolstered Lubin's opinion testimony by eliciting her agreement that it was in line with the practice and policies of her office. As discussed above, Gamache has not shown that such objections would have been sustained. He fails to establish deficient performance.

Additionally, Gamache contends counsel was deficient by failing to request a limiting instruction when the court admitted evidence of his previous attempt to take McCune's pills. Failure to request a limiting instruction may be a legitimate tactical decision not to reemphasize damaging evidence. State v. Yarbrough, 151 Wn. App. 66, 90, 210 P.3d 1029 (2009). That is the case here. The record shows that defense counsel considered requesting a limiting instruction before ultimately deciding not to offer one. We conclude counsel made a tactical decision and did not render deficient performance.

Polling of the Jury

The first trial transcript submitted to this court showed that only 11 jurors were polled as to whether the verdict was unanimous. Gamache argued in his opening brief that the absence of the twelfth juror required reversal. The State obtained and submitted a corrected transcript. Unable to determine which transcript was reliable, we asked the trial court to settle the record as permitted by RAP 9.5. The trial court reviewed the audio recording of the polling of the jury

and determined that the second transcript is correct. We accept that determination. There was no error in the polling of the jury.

Cumulative Error

The combined effect of an accumulation of errors not individually reversible may necessitate a new trial. State v. Coe, 101 Wn.2d 772, 789, 684 P.2d 668 (1984). Gamache alleges but fails to establish the existence of multiple errors.

Affirmed.

Becker, J.

WE CONCUR:

23