# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 50925-3-II |
| Respondent, | |
| v. | |
| AHRIA JAMES KELLEY, | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, J. — Ahria J. Kelley appeals his convictions for unlawful possession of a firearm and obstructing a law enforcement officer. Kelley argues that the State committed prosecutorial misconduct in its rebuttal closing argument by referring to Kelley as a "convicted felon" and that the trial court erroneously admitted testimony from Kelley's community custody officer (CCO). We disagree and affirm Kelley's convictions.

## FACTS

### I. BACKGROUND FACTS

Early in the morning in August 2016, Pierce County law enforcement deputies responded to a report of a man with a gun at an apartment complex. Deputy Robert LaTour observed a man, later identified as Kelley, stagger between two apartments where he leaned against a building and urinated. When Deputy LaTour shined his flashlight on Kelley and identified himself as police, Kelley "held onto his pants and scurried off" between the buildings and into the shadows. 3 Verbatim Report of Proceedings (VRP) at 354. Deputy LaTour did not pursue Kelley.

Deputy Levi Redding saw Kelley running alongside the apartment complex and yelled at him to stop. Deputy Redding pursued Kelley, who ran into a breezeway between apartment buildings. As Deputy Redding approached the breezeway, he heard a loud, metal, hollow noise, then saw Kelley run out of an alcove on the side of one of the apartment buildings. The deputies ultimately detained Kelley and arrested him.

Deputy Redding returned to the alcove to investigate the hollow metal sound he had heard. He found a barbecue grill underneath the stairs. Deputy Redding opened the lid to the barbecue and found a loaded firearm.

## II. PROCEDURAL FACTS

The State charged Kelley with first degree unlawful possession of a firearm and obstructing a law enforcement officer.

At trial, Kelley moved to exclude any testimony from his CCO. Kelley argued that the CCO's testimony that Kelley was on community custody at the time of the incident and was not allowed to consume alcohol or possess a firearm was not relevant, unduly prejudicial, and inadmissible prior bad act evidence.

The State argued in response that the CCO's testimony was relevant to Kelley's motive to run and hide the firearm when contacted by law enforcement. The State argued that any prejudice from the testimony would be "minimal at best" given that Kelley planned to stipulate to the jury that he had been previously convicted of a serious felony offense. 1 VRP at 9. The State emphasized that the CCO's testimony would be limited to the fact that Kelley was on community custody, Kelley knew the repercussions of violating the terms of his community custody, and that is why Kelley acted the way he acted when contacted by law enforcement. VRP (7-20-17) 12.

2

The trial court ruled to permit the CCO to testify that Kelley "was on [Department of Corrections] supervision and the conditions would provide that he was not—he was not supposed to have any alcohol or possession of any firearm and limit it to that subject matter, exactly the offer of proof that you made to the Court." 1 VRP at 13. The trial court entered an order memorializing its ruling that the CCO's testimony was more probative than potentially prejudicial. The trial court limited the CCO's testimony to the following relevant areas:

> that the defendant was on community custody at the time of the incident in question, that the CCO communicated to the defendant multiple conditions of community custody to include an alcohol/drug prohibition and a prohibition on possessing firearms, and the CCO communicated to the defendant that he would be sanctioned if he breached any condition of community custody.

Clerk's Papers (CP) at 8-9.

During trial, Kelley stipulated that he had been previously convicted of a serious offense. 5 VRP at 497-98. The trial court instructed the jury that it could consider evidence that Kelley had been previously convicted of a crime "solely for the purpose of deciding whether the State has proved that, while in possession of a firearm, the defendant had been previously convicted of a serious offense. Such evidence may be considered for no other purpose." CP at 17.

In his closing argument, Kelley argued that the State's theory that Kelley hid the gun in the barbeque did not make sense because of Kelley's intoxication.

> He could not even maintain balance, okay. No testimony came out that any kind of a holster was found on Mr. Kelley. So we are to believe that without any holster—you know, there's only a couple places—the gun is a—you saw it. It's a rather decent-sized gun. It's not a full size, but it's still a decent-sized gun. You can either tuck it in, you know, your—this area or pocket or maybe in the back. There's only a few places. But if he's so intoxicated, he's stumbling and can't maintain his balance, but, yet, he's able to go all around the whole building, around the side. He doesn't ditch it anywhere else where he has lots of better places to ditch it and is able to calmly go back to the barbeque gill [sic] and put it inside the

barbecue grill. So I submit to you that that theory does not make sense because per the State's own testimony, Mr. Kelley was heavily intoxicated, could not even keep his balance.

5 VRP at 543-44.

In rebuttal, the State responded to Kelley's closing argument regarding the holster.

Well, I don't know how he was carrying the gun, but if you're convicted of a serious offense so you know you can't have a gun, and if you know that you're on community custody and you can't have a gun, are you going to carry a gun in a holster? Here's my gun, ladies and gentlemen. Is that how you're going to carry it? If you know you're a convicted felon and can't have a gun, you're probably going to carry it in your pocket.

The fact that he was on community custody and knew he couldn't do those things, he couldn't have a gun, he couldn't have—he couldn't have alcohol in his system, you can take that into consideration in deciding the defendant's motive for running, for ditching the gun.

5 VRP at 568.

Kelley moved for a mistrial based on the State's rebuttal statement that Kelley was a convicted felon. Kelley argued that describing him as a "felon" exceeded the instruction given to the jury about his prior serious offense stipulation and was so prejudicial that it eliminated his right to a fair and impartial trial. Kelley explained that he did not object at the time of the State's statement because he did not want to draw the attention of the jury to the statement at that time. The trial court denied Kelley's motion, noting that the jury was already instructed to limit its use of Kelley's prior conviction.

The jury found Kelley guilty as charged. Kelley appeals.

ANALYSIS

I. PROSECUTORIAL MISCONDUCT

Kelley argues that the State committed prosecutorial misconduct when it argued in its rebuttal closing argument that Kelley was a "convicted felon." We disagree.

To prove that the State committed prosecutorial misconduct, Kelley must show that the State's comment was improper and prejudicial.[1] *State v. Lindsay*, 180 Wn.2d 423, 430, 326 P.3d 125 (2014). We review allegedly improper arguments in the context of the total argument, the issues of the case, the evidence addressed in the argument, and the jury instructions. *State v. Thierry*, 190 Wn. App. 680, 689, 360 P.3d 940 (2015). A prosecutor's statements are not grounds for reversal if they were invited or provoked by defense counsel and are in reply to defense counsel's acts and statements. *Thierry*, 190 Wn. App. at 690. To show prejudice, Kelley must show a substantial likelihood that the prosecutor's statement affected the jury's verdict. *Lindsay*, 180 Wn.2d 440.

Here, Kelley fails to show that the State's comment was improper. Kelley stipulated that he had been previously convicted of a serious offense as required as an element of first degree unlawful possession of a firearm, RCW 9.41.040(1)(a). Former RCW 9.41.010(21) (2015) defines "serious offense" and contemplates only felony offenses. Therefore, by law, in order for Kelley to have been previously convicted of a "serious offense" for purposes of first degree unlawful possession of a firearm, he necessarily must have been convicted of a felony. Consequently, under

---

[1] Although Kelley did not object at the time of the State's statement, he moved for a mistrial immediately following the prosecutor's rebuttal closing. Thus, the issue was properly preserved for appellate review. *State v. Lindsay*, 180 Wn.2d 423, 430-31, 326 P.3d 125 (2014).

Kelley's stipulation, the State's comment was an accurate statement of the law and therefore it was not improper. *See State v. Johnson*, 158 Wn. App. 677, 683-84, 243 P.3d 936 (2010).

Further, the prosecutor's statement was in response to Kelley's closing argument that because Kelley did not have a gun holster and was intoxicated, he likely could not carry the gun. A prosecutor is entitled to respond to defense counsel's argument. *Thierry*, 190 Wn. App. at 690.

Moreover, Kelley fails to show a substantial likelihood that the prosecutor's statement affected the jury's verdict. The jury knew that Kelley was previously convicted of a serious offense and was on community custody at the time of the incident. The trial court instructed the jury that it should only consider the evidence that Kelley had been previously convicted of a crime for the purpose of deciding whether the State had proved that while in possession of a firearm, Kelley had been previously convicted of a serious offense. We presume that juries follow the court's instructions. *State v. Stein*, 144 Wn.2d 236, 247, 27 P.3d 184 (2001).

Consequently, Kelley fails to show that the State committed prosecutorial misconduct by describing Kelley as a convicted felon in its rebuttal closing.

## II. CCO'S TESTIMONY

Kelley also argues that the trial court abused its discretion by admitting his CCO's testimony because it was not relevant and more prejudicial than probative. We disagree.

We review the trial court's ruling to admit or exclude evidence of misconduct for an abuse of discretion. *State v. Foxhoven*, 161 Wn.2d 168, 174, 163 P.3d 786 (2007). A trial court abuses its discretion if it admits evidence contrary to law, or when its decision is manifestly unreasonable or based on untenable grounds or reasons. *State v. Quaale*, 182 Wn.2d 191, 196-97, 340 P.3d 213 (2014).

Evidence of a defendant's prior misconduct is generally not admissible to demonstrate the accused's propensity to commit the crime charged. *State v. Fisher*, 165 Wn.2d 727, 744, 202 P.3d 937 (2009); ER 404(b). However, ER 404(b) allows for the introduction of evidence of prior misconduct for other purposes, such as showing motive or intent. *Fisher*, 165 Wn.2d at 744.

We read ER 404(b) in conjunction with ER 403, which requires the trial court to exercise its discretion in excluding relevant evidence that would be unfairly prejudicial. *Fisher*, 165 Wn.2d at 745. Prior to admitting misconduct evidence, the trial court must (1) find by a preponderance of the evidence that the misconduct actually occurred, (2) identify the purpose of admitting the evidence, (3) determine the relevance of the evidence in proving an element of the crime, and (4) weigh the probative value of such evidence against its prejudicial effect. *Fisher*, 165 Wn.2d at 745.

To avoid error, the trial court must identify the purpose for which it admits the evidence and must conduct the balancing test on the record. *State v. Jackson*, 102 Wn.2d 689, 693-94, 689 P.2d 76 (1984). Failure to balance probative value versus prejudice on the record "requires reversal only if the error, within reasonable probability, materially affected the outcome of the trial." *State v. Halstien*, 122 Wn.2d 109, 127, 857 P.2d 270 (1993). If the record as a whole is sufficient to permit meaningful review, a reviewing court may affirm the introduction of ER 404(b) testimony. *State v. Donald*, 68 Wn. App. 543, 547, 844 P.2d 447 (1993).

Kelley contends that the trial court failed to conduct the required ER 404(b) inquiry on the record. In ruling to admit the CCO's testimony, the trial court expressly adopted the State's argument. *See* 1 VRP at 13 ("exactly the offer of proof you made to the Court."). In its written order, the trial court concluded that the probative value of the testimony outweighed any potential

prejudicial effect. However, the trial court did not explicitly weigh the evidence on the record or state specific reasons for its decision. *See Jackson*, 102 Wn.2d at 693-94. Nonetheless, to the extent the trial court erred in making a thorough record before admitting the CCO's testimony, the record as a whole is sufficient to permit our meaningful review.

The State explicitly offered the CCO's testimony about the conditions of Kelley's community custody to show Kelley's motive to run and hide the firearm when he was contacted by law enforcement. ER 404(b) evidence is admissible to show motive. *Fisher*, 165 Wn.2d at 744. The evidence was relevant to prove that Kelley knowingly possessed the firearm that Deputy Redding found in the barbecue. Further, the probative value of the evidence outweighed its prejudicial effect. Testimony that Kelley was in community custody posed little risk of prejudice because the jury knew that Kelley had a criminal conviction due to his stipulation that he had previously been convicted of a serious offense. Further, the trial court eliminated the risk of prejudice by limiting the CCO's testimony to only the facts that Kelley was on community custody at the time of the incident, Kelley knew the conditions of his community custody including an alcohol prohibition and a prohibition on possessing firearms, and Kelley knew he would be sanctioned if he breached the conditions of his community custody.

We hold that the trial court did not abuse its discretion in admitting the CCO's testimony that Kelley was on community custody, and as such he was prohibited from using alcohol or possessing a firearm, under ER 404(b).

### III. CUMULATIVE ERROR

Kelley also argues that the cumulative effect of errors at trial denied his right to a fair trial. We disagree.

The cumulative error doctrine applies when a trial is affected by several errors that "standing alone may not be sufficient to justify reversal but when combined may deny a defendant a fair trial." *State v. Greiff*, 141 Wn.2d 910, 929, 10 P.3d 390 (2000). To determine whether cumulative error requires reversal of a defendant's conviction, we must consider whether the totality of circumstances substantially prejudiced the defendant. *In re Pers. Restraint of Cross*, 180 Wn.2d 664, 690, 327 P.3d 660 (2014) (abrogated on other grounds by *State v. Gregory*, 192 Wn.2d 1, 427 P.3d 621 (2018)). The cumulative error doctrine does not apply when there are no errors or where the errors are few and have little or no effect on the trial's outcome. *State v. Weber*, 159 Wn.2d 252, 279, 149 P.3d 646 (2006).

Because we hold that Kelley fails to identify any errors, the cumulative error doctrine does not apply. Accordingly, we affirm Kelley's convictions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

LEE, A.C.J.

TRICKEY, J.P.T.

9